## VAN BRUNT *v.* VAN BRUNT.

The intention to limit a release to a particular debt, where general words are used, must be ascertained from the instrument containing the release and cannot be shown by extrinsic evidence.

Creditors of D. deceased signed a composition and release to his administratrix. It recited his indebtedness to them generally, gave the total of all their debts together, ($1082 25,) and did not state how much he was indebted to each. The release was, in its terms, a general one. A creditor, and who signed the release, held at the time a bond for $625 executed by D. and a surety and a mortgage for further security made by D. The court would not allow extrinsic evidence to prove that the release had reference to another debt; but decreed the bond and mortgage cancelled.

An erasure in an immaterial part of a deed will not vitiate it, provided such erasure be the act of a stranger; but it is otherwise where made by a party to or claiming under it. But the fact of alteration by the party ought to be proved and not merely presumed.

ON the eighteenth day of May, one thousand eight hundred and thirteen, Elias Denman and Jane his wife and Letty Van Brunt joined in a mortgage of lands to the complainant, Rutgert W. Van Brunt, to secure the payment of a simultaneous bond executed by the same parties, conditioned for six hundred and twenty-five dollars, with interest at six per cent. and payable one year after date. The debt was owing by Elias Denman ; his wife joined with him in the bond, as did also Letty Van Brunt as surety. Denman was seised of the mortgaged lands in right of his wife. The fee was in her, subject to the life estate of Letty Van Brunt.

Elias Denman afterwards died, leaving some personal estate, but not sufficient to pay his debts ; and his widow having administered, an agreement in writing was entered into on the seventh day of January, one thousand eight hundred and eighteen, purporting to be between the several creditors of Elias Denman, deceased, who had thereunto subscribed their names and affixed their seals of the one part, and the said administratrix of the other part. It recited that Denman, at the time of his death, was indebted unto the several creditors execut-

ing the instrument in divers sums of money, amounting in the
whole to one thousand and eighty-two dollars and twenty-five
cents; that the personal estate, of which the administratrix
had possessed herself, amounted in value to four hundred and
fourteen dollars, and the creditors had agreed she should keep
and retain all the personal estate to her own use, upon her se-
curing a like amount to be distributed *pro rata* among the cre-
ditors; and that she had accordingly given the security for the
payment and distribution of four hundred and fourteen dollars.
In consideration thereof, the several creditors who had there-
unto subscribed their names and affixed their seals did thereby
"release and forever discharge the said Jane Denman, her
executors and administrators, and all the goods, chattels and
credits which were of the said Elias Denman, deceased, from
all action and actions, cause and causes of action, suits, bills,
bonds, *mortgages*, accounts, debts, damages, claims and de-
mands whatsoever in any way relating to, arising out of or
concerning the said several debts so as aforesaid due and ow-
ing unto them the subscribing creditors respectively."

The complainant, as one of the creditors, became a party
to this agreement and release, by executing the same under
his hand and seal.

It did not appear what were the nature and amount of the
particular debts which formed the subject of the composition
and release. The deed showed that nineteen different debts
or demands were thereby discharged (that number of persons
having executed it,) and that the aggregate amount was one
thousand and eighty-two dollars and twenty-five cents.

A second bond and mortgage formed a part of the subject
matter of the suit. They were dated the twelfth day of May,
one thousand eight hundred and eighteen, and given by Jane
Denman (while she was a widow,) and by Letty Van Brunt
for securing to the complainant the sum of four hundred and
twenty-eight dollars, with interest at six per cent. payable in
one year after the date. The mortgage covered the same or
a part of the same premises embraced by the former one.
After giving this bond and mortgage, Jane Denman intermar-
ried with and became the wife of Joseph Lawrence. And
since the filing of the bill and the putting in of the answer by
Lawrence and wife and Letty Van Brunt (who were the ori-

ginal defendants) they had all died, whereby the life estate of Letty Van Brunt ceased, and the fee which was in Jane devolved upon her brother Stephen Van Brunt as heir at law, who had subsequently been made a defendant, together with his committee, by a bill of supplement and revivor. The defence set up in the answers of the original parties against the last mentioned bond and mortgage was a want of consideration; and that the same were improperly obtained: but this was not sustained by proof.

The court was called upon to decide whether the composition, agreement and release operated to discharge the debt secured by the first bond and mortgage. Also, as to the effect of a supposed erasure in the release, whereby the word *mortgages* appeared to be substituted for some other.

Mr. *G. Furman*, for the complainant.

Mr. *I. A. Lott*, for the defendant.

*27 October.*   THE VICE-CHANCELLOR :—From a perusal of the composition agreement and release, it would appear that no other sums than such as constituted the amount of one thousand and eighty-two dollars and twenty-five cents were intended to be released. It is limited in its terms to such debts, claims or demands as are spoken of in the recital; and yet again, these may have been all the debts owing by Elias Denman or which existed against his estate. I think the fair interpretation of the instrument is that all the debts and sums of money owing to the nineteen creditors were taken into account. Its language, in the recital, is that Denman, at the time of his death, was indebted to them in divers sums of money amounting " in the whole" to the sum already mentioned, that the personal estate being insufficient to pay all the debts owing by the said Denman at the time of his death, the said several creditors had consented and agreed to let the widow retain the property and each accept his proportion of its estimated value; and then follows the discharge of their several debts in consideration of her having secured, in the manner agreed upon, the payment and distribution of such estimated value among them. The obvious meaning is that all debts and demands whatso-

ever which any of the creditors who came into the arrange-
ment had against Elias Denman or his estate in the hands of
the administratrix were thereby discharged. I know not how
to put any other construction upon it.

The rule, undoubtedly, is that a release, although made out in
broad and general terms, is to be restricted in its operation to such
matters as, upon a fair construction of the whole instrument,
shall appear to have been intended by the parties and within their
contemplation at the time: *McIntyre* v. *Williamson*, 1 Ed-
wards' V. C. Rep. 34. But this restriction upon its operation is
matter of construction only. The intention of limiting it to a
particular debt or demand, where general words are used,
must be ascertained from the deed itself or the instruments *in
pari materia* containing the agreement and release. Extrinsic
evidence cannot be received to show that a particular debt or
demand was not included or intended to be discharged, con-
trary to the plain letter of the instrument or where the words
are sufficiently broad to comprehend all claims which the re-
leasor might possibly have : *Russell* v. *Rogers*, 10 Wend.
473.

It may seem strange that a debt of six hundred and twenty-
five dollars secured by the bond of a third person and a mort-
gage of lands of sufficient value to satisfy the whole debt
should have been included in an agreement by which the cre-
ditor was to accept, in satisfaction and discharge of his
whole debt, a share of his debtor's personal property suffi-
cient to pay only about forty per cent. of the amount; and
the natural inference would be that such debt was not in-
cluded, but that some other demand existed which was the
subject of the compromise. Indeed, this is a matter not
left to inference : for proof is exhibited, on the part of the
complainant, of another bond which he held against Elias
Denman for three hundred and thirty-three dollars, upon
which he received his dividend and then cancelled it—also,
that the composition and release had no reference to the
bond and mortgage in question. But this evidence, for the
reasons already given, is inadmissible. The complainant
cannot be permitted to say he entered into this arrange-
ment in common with other creditors, bringing in a part of

1834.

VAN BRUNT
*v.*
VAN BRUNT.

his demand or one debt only and keeping back another part or a co-existing debt. There is no evidence to show that the other creditors knew of two distinct debts which he held against Denman, and that one of them was secured by a mortgage which he intended to reserve and not to discharge by coming in with them and signing the release. It was clearly a general composition agreement. As the law stood when the document was made, specialty creditors were entitled to preference over those by simple contract ; and among the creditors of equal degree, the administratrix was at liberty to exhaust the assets by paying one in full to the exclusion of others, or by confessing judgments to give one or more the preference of payment out of the assets. If there were no other inducements, these considerations alone might be sufficient for proposing and entering into an arrangement, by way of compromise, amongst the creditors by which such inequality should be prevented and all be made to fare alike in the settlement of the estate. Good faith, then, required that each creditor, coming into the arrangement and professedly submitting the whole of his debt or demand to its operation, should be bound to the full extent. His example probably served as an inducement to others to subscribe to its terms ; and after holding out such an example or after professing to act a generous part towards his debtor—although he might have been the last who actually signed the composition deed—he shall not be permitted, by any private agreement with his debtor, to reserve to himself a part of his debt or hold any claim against him for further payment, or to stipulate for any thing better in the shape of security or otherwise than other creditors receive, and with whom he makes a common cause. This principle is firmly established in courts of law : *Russell* v. *Rogers*, supra, and cases there cited ; and it is no less so in equity : *Ex parte Sadler and Jackson*, 15 Ves. 52. Thus, the complainant would be precluded from asserting any further claim upon the bond for six hundred and twenty-five dollars against the estate of the principal obligor, Elias Denman or his personal representative—and being discharged as to him, the debt is gone as well as all the security for the payment of it—in fact, the mortgage cannot now be enforced.

An objection was taken at the hearing to the release, upon the ground of its having undergone an alteration since it was executed, by the erasure of one word, probably that of *notes* and writing, in its place, the word *mortgages*, so as to appear a release of mortgages as well as of bills, bonds, &c.; and from an inspection of the instrument, it is plain that such alteration has been made. Still, it does not appear by whom it was effected. A witness only testifies that the word " mortgages" was not there at the time it was executed. The alteration, however, is an immaterial one. " *Notes*" or " *mortgages*" would make no difference, it would be just as effectual without them. As to the effect of an alteration in the deed :— If it be in an immaterial point and made by a stranger, the alteration will not vitiate the deed ; although the rule is laid down otherwise if an alteration even of immaterial words is made by a party to or by one claiming under it : 11 Coke 27, (a), and Fraser's note B. But in order to avoid the deed in the latter case, I consider the fact of alteration by the party in interest should be proved. Such a thing ought not to be presumed, because it would suppose him guilty of a fraud— and it is upon the idea of fraud on his part in making an alteration without the consent of the party who has executed the deed that the rule is founded. There is no proof before me of the alteration having been made by any one who sets up or claims the benefit of this release. I am of opinion, therefore, it is not to be held void in their hands.

The defence as to the second bond and mortgage has failed. There is not enough to warrant me in decreeing otherwise than in favor of this bond and mortgage. A reference must be had to take an account of the amount due upon it, with a decree in the usual form, for a sale, unless the defendant or his committee redeem by paying principal, interest and costs. If the defendant has any claim, arising under the will of his father, Cort Van Brunt, against the complainant, it must be the subject of a separate suit for an account, and in which, perhaps, other persons may be necessary parties. Such claims are not set up in this suit and cannot now be the subject of inquiry with a view to a set-off.