## HOES and others vs. VAN HOESEN.

Where a reversionary interest in personal property is not disposed of by the will of a testator, it does not necessarily belong to those who may happen to be his next of kin at the termination of the particular estate or interest in such property which is bequeathed by him. But, as an interest in property undisposed of by the will, it belongs to the widow and next of kin of the decedent, who were entitled to distributive shares in such unbequeathed interest at the .death of the testator.

And if any of the parties entitled to such distributive shares die without disposing of

Hoes *v.* Van Hoesen.

their interests therein, their shares will go to their personal representatives, as a part of the personal estate of such decedents.

An interest in the personal estate of the testator, given by his will to a legatee who is in esse, although it is not to vest in possession until after the death of another person, vests in interest in the legatee immediately upon the death of the testator; and is capable of being released by such legatee at any time.

It is a general rule that where there is a particular recital in a release, and nothing appears on the face of the instrument to show that any thing beyond the matter of such recital was intended to be discharged, general words of release following such recital will be qualified by it; so as not to discharge other claims which were not in the contemplation of the parties.

But the construction of a release must depend upon the language of the instrument itself; and extrinsic evidence cannot be resorted to, for the purpose of showing the intention of the party executing such release.

The personal estate of a testator is the primary fund for the payment of debts; notwithstanding the will contains an express dedication of a portion of the real estate for the payment of debts or legacies, and the testator has disposed of all his personal estate specifically.

It is a general rule also, that the personal estate is the primary fund for the payment of legacies, although such legacies are charged upon real estate; whether such real estate be devised, with a direction to the legatee to pay the legacies, or is charged with such legacies, or is given to trustees for that purpose.

But in reference to legacies, an absolute and specific disposition of all the personal estate of the testator, and not a mere residuary bequest, is sufficient to manifest the intent of the testator to charge the realty in exoneration of the personalty.

Where the personal estate is not, in terms, exonerated from the payment of debts or legacies, and where the debts and legacies are not declared to be chargeable upon the real estate exclusively, an interest in personal property not disposed of by the will is not exonerated; but is the primary fund for the payment of legacies as well as debts.

Even where the personal estate is in terms exonerated, for the benefit of a particular legatee, and not for the benefit of the estate generally, the failure of the particular bequest destroys the exoneration, *pro tanto.*

THIS was an appeal, by the defendant, from a decree of the late vice chancellor of the third circuit. Matthew Van Hoesen died in 1817, seised of a farm in Columbia county worth nine or ten thousand dollars, and possessed of personal property, exclusive of farming utensils, furniture, and stock on the farm, of the value of about $5000. He left a widow, and three sons, John, the defendant in this suit, George and Lambert, and three daughters, Maria, now the wife of C. C. Hoes, and Ann, the wife of A. Hager, the complainants in this suit, and Jane; his

only children and heirs at law. By his will, made on the day of his death, he disposed of his property as follows: "I give, devise and bequeath unto my two sons, John and George, all my farm of land, with all thereunto belonging, with my house, barn, &c. to them, their heirs and assigns forever, share and share alike; with all my farming utensils, and also all my stock, of whatever nature, now on my farm. I give, devise, and bequeath unto my son Lambert $3000, to be paid in one year after my decease, by my two sons John and George. I give, devise, and bequeath unto my three daughters, *Dorothe*, Ann, and Jane, each the sum of $700; also to be paid by my two sons John and George, as they severally become of age. *Item;* It is my will that my beloved wife Dorothe shall have the use and income of *all my estate* as long as she remains my widow." And he appointed his wife executrix, and his brother and his son John, the defendant in this suit, his executors; the two last of whom proved the will and took out letters testamentary thereon. The brother of the testator died in 1822, leaving the defendant the sole executor. The debts and funeral expenses, amounting to about $200, were paid by the executors. And the widow survived until June, 1834, when she died, without having again married; leaving the six children of the testator surviving her. At the time of the death of the testator, his son George was but sixteen years of age, and had no property or means of paying his share of the legacies given to his brother and sisters, except the property devised and bequeathed to him by his father, subject to the estate of his mother therein during her life or widowhood. And the defendant, although he was then of age, was worth less than $200, exclusive of his interest in the property of his father which was given to him by the will. The executors, therefore, with the assent of the widow, paid the pecuniary legacies, as they became due, out of the moneys due to the testator, and the proceeds of the other personal property. And being advised by the late Judge Vanderpoel, and other lawyers, who were friends of the family, that the will, as drawn, did not correctly and clearly express the intentions of the testator, but was so drawn that difficulties might

thereafter arise, the defendant, upon paying the amount of such legacies out of the personal property, took from the legatees respectively, releases to such executors, under seal, releasing them from all claims of such legatees, for or on account of the real or personal estate of the testator. Maria, one of the daughters of the testator, and who by mistake was called Dorothe in the will, was of full age two or three years before the death of the testator; and she was unmarried at the time she received her legacy in 1818, out of the proceeds of such personal estate. And she therefore executed a release, drawn from a form which Judge Vanderpoel had prepared for the defendant to be executed by the legatees respectively. By that release, after reciting the giving of the legacy to her by the will of the testator, and that the $700 and interest thereon had been paid to her by his two sons, John and George, she did, for and in consideration of the premises, and the further sum of one dollar, release and discharge them from the payment of the said legacy or any part thereof; and did release them, and the executors and executrix named in the will of her father, of and from all claims which she had, or might have, of, in or to any part of his estate, either real or personal; thereby declaring that she had received her full share and proportion thereof.

The defendant made an arrangement with his mother, by which he carried on the farm under her, and had the control and possession of the farming utensils, stock, &c. during her life, and provided for her support; and the minor children of the testator lived with, and were supported by her, during their minorities. And when his brother George became of age, the defendant purchased all his interest in his father's estate. After his sister Ann was married, the defendant also paid to her husband her legacy with interest. And he subsequently took from her said husband, a release under seal, dated in March, 1833. By that release, the latter, in consideration of $700, theretofore paid to him by the defendant, as one of the executors of the will of M. Van Hoesen, did release and discharge the defendant, as such executor, of and from all claims, legacies, rents and demands which he then had, or ever had in right of his wife, the

Hoes *v.* Van Hoesen.

daughter of the deceased testator, by virtue of the will of her father; and also of and from all claims and demands, which the releaser then had, or which he ever had in right of his wife, of, in, and to the personal property of which the testator died possessed; and thereby acknowledged that the payment of the $700 to him was taken and received in full for all of his wife's share of, in, and to the estate of her deceased father.

About five years after the death of the widow, Maria and Anne, two of the daughters, with their husbands, filed their bill in this cause against the defendant as the surviving executor, claiming two sixths of the residuary personal estate of the testator, with interest thereon from the death of the widow; as an interest in the personal estate, not disposed of by will. The bill alleged, among other things, that the legacy of Mrs. Hoes was paid to her and her husband, after her marriage, and that when it was paid, and the acquittance therefor executed, the defendant had possession of the will, and knew the contents and legal effect thereof, and also knew that she would be entitled to one sixth of the personal estate after the death of the widow; but that they had never seen the will at that time, and the defendant was aware that they were ignorant of it. And the complainants insisted that if the acquittance purported to discharge anything but the legacy of $700, it was false and fraudulent. The same charge, in substance, was contained in the bill, in relation to the legacy of Mrs. Hager, and to the release given for the same by her husband. The defendant, in answer to these charges in the bill, stated that the will was opened and read in the presence and hearing of all the family of the testator, a few weeks after his death, and was proved and recorded in March of the next year; that it was the declared will of the testator, previous to, and at the time of making his will, to give his real estate to his sons John and George, and his money at interest to his son Lambert and the daughters; that the scrivener, who drew the will, had instructions from the testator to draw it so as to give the farm and farming utensils, and the stock on the farm, to the widow for life, and after her death to the defendant and his brother George, and to direct the legacies to the other children to be paid out of

Hoes *v.* Van Hoesen.

his other personal property, which consisted principally of money at interest; and that it was owing entirely to the igno-rance and mistake of the scrivener, and the weak state of the testator, that it was not drawn and made according to such in-structions; that at the time such releases were executed, the defendant had no doubt, or reason to doubt, but on the contrary verily believed, that the legatees and Hager, the husband of Anne, were agreed as to what was the intention of the testator, and that they were all willing to carry that intention into effect; and that they executed such releases for that purpose, freely and with a full knowledge of their contents. He also denied that he committed any fraud, or used any art, stratagem, or de-vice, for the purpose of procuring the releases, or either of them; but stated on the contrary, that the widow, out of respect to the intention of the testator, and to promote harmony in the family, relinquished her claim to the income of the personal estate, and consented that the amount then out upon interest should be ap-plied to pay off the legacies; and that his sister Maria, who was then twenty-four years of age and unmarried, agreed to receive the $700 legacy, and to execute to the defendant and to his brother George and the executors, a full and absolute release of all claims upon the real and personal estate of the testator; that the defendant thereupon paid her the legacy and interest, by giving his note to her for the amount, which was subse-quently paid by him, and she executed her release accordingly, at the time of receiving such note; and that A. Hager, after his intermarriage with her sister Anne, also agreed to receive the amount of the $700 legacy to his wife, and to execute a full and absolute release of all claims upon the real and personal estate of the testator; and that the defendant thereupon paid the $700 and interest to him, and he thereafter executed the release ac-cordingly. The answer further stated, that such releases were freely executed, with a full knowledge, on the part of the par-ties executing them, of their contents; and with a full knowl-edge, or the means of obtaining information, of all their rights, and without any fraud or misrepresentation, on the part of the defendant. The defendant thereupon insisted upon such re-

Hoes *v.* Van Hoesen

leases as a full and complete bar to the claim of the complainants. And he also submitted to the court, whether, upon the true construction of the will, the personal estate, other than the stock and farming utensils, belonged to the children of the testator as distributees, under the circumstances stated in the answer.

No proofs were taken by either party, but the cause was brought to a hearing upon the pleadings. The vice chancellor decided and decreed that the complainants were entitled to have and receive from the defendant, two sixths of the value of the personal property of the testator exclusive of the farming utensils and stock upon the farm, with interest thereon from the death of the widow; after payment of the debts and funeral expenses of the testator. And he directed a reference to a master, to take and state an account of the personal estate, upon that principle.

*A. L. Jordan,* for appellant. I. The legacies were not expressly charged by the will upon the real estate. It created at most a charge upon the real estate by implication; or upon John and George, the devisees, in respect to the real estate. The personal fund was therefore primarily liable and must be applied in exoneration of the real estate. 1st. Because the will did not in terms charge the legacies to be paid out of the real estate, to the exclusion of the personal property. 2d. Because there was no plain intent to that effect to be gathered from the will. 3d. It is improbable that the testator intended to charge the estate in remainder in the farm devised to the defendant and his younger son with $5100 legacies, in exoneration of the personal estate. The whole property thus devised to them, or nearly the whole, would have been swept away. In *Ancaster* v. *Mayer,* (1 *Brown's C. C.* 460,) the chancellor says, "The question that next arises is, whether a real estate being charged, and the personal given away, a presumption arises that this shall be exempted from the payment of the debts. I never heard, till the arguments in this case, that such a rule had been extracted from the authorities on the subject: on the contrary, I have always un-

Hoes *v.* Van Hoesen.

derstood, that in order to exempt the personal estate, the testator must express an intention to do so; although no particular form of words was necessary. I therefore take the rule *imprimis* to be, that neither the charge of the debts upon the real estate, nor the gift of the personal, is sufficient of itself to exempt it." And again in the same case, the chancellor, after suggesting that it might have been better had the rule been adopted requiring express words in the will, for the purpose of exempting the personal estate, says, " therefore if there be a declaration plain, or manifestation clear, so that it is apparent upon the face of the will that there is such a plain intention, to exempt the personal estate, the rule then is not to disappoint, but to carry such intent into execution. But should not such intention manifestly appear, there is not a single case which does not take it for granted that the personal estate is by law the first fund for the payment of debts." (*See also Tait* v. *Lord Northwick,* 4 *Vesey,* 816; *Livingston* v. *Newkirk,* 3 *John. Ch. Rep.* 319; *Watson* v. *Buckwood,* 9 *Ves.* 448; *Kelsey* v. *Deyo,* 3 *Cowen,* 133; *Tole* v. *Hardy,* 6 *Id.* 333.)

II. The whole of the personal estate, not specifically devised, having been exhausted in the payment of the legacies, John and George contributed the residue, and paid them off—or which amounts to the same thing, they procured from the widow a consent that the personal fund should be applied to the payment of the debts, and it was applied accordingly. No balance of personal property, therefore, remains in the hands of the defendant, as executor, to be distributed. It is all fully accounted for by the payment of the legacies.

III. The income of the whole real and personal estate belonging to the widow during her life, the defendant is not responsible in this suit for any thing which may have come to his hands from either of those sources. If he is accountable for any thing, it is to the administrator or personal representative of the widow alone.

IV. The releases executed by the complainants to the defendant, extinguished all claims upon the estate, real and personal, in the hands of the defendant, as executor or otherwise. The

Hoes v. Van Hoesen.

releases are broad, and cover the whole ground of claim upon the estate, in any shape. All fraud in procuring the releases is expressly denied, in terms. And the facts set forth in the answer in response to this bill shew that there was no fraud. There was no misrepresentation or artifice used: no suppression of facts or information. The plaintiff had knowledge of the contents of the will, or full and ample means of information, equally with the defendant. The defendant was under no obligation to inform them of what they knew, or, with ordinary diligence, might know as well as himself. The facts set forth in the answer in response to the bill, shew that the plaintiffs have been paid more than they were entitled to by the will. The latter clause of the will giving the whole use and income of the whole estate to the widow for life, so qualified and restricted the former clause as to make the legacies not payable until after the widow's death. No legacy can be deemed to be payable until by the terms of the will, funds come into the hands of the executors or persons charged with the payment, sufficient for the payment thereof. The legatees were not therefore, at the time of the payment of the legacies, *ex æquo et bono* entitled to any more than the amount thereof, with a rebate of interest for the life of the widow, upon annuity principles. The facts set forth in the answer in response to the bill, show that the sons, John and George, upon the construction contended for by the plaintiffs, would have been stripped of the testator's bounty, and most probably brought in debt; because their estate in remainder in the farm, stock and utensils, would not at that time have been actually worth enough to pay the legacies.

Upon the whole, so far from the complainants having cause of complaint, in regard to the execution of these releases, either upon the ground of fraud or hardship, they acted with their eyes open ; with full knowledge, or the most ample and ready means of knowledge. The most obvious justice and equity required of them all they have done. They have been very fairly and liberally dealt with, and there is gross injustice in the present attempt to evade their own deliberate acts. They have reaped the full benefit of those acts by a prompt payment of their lega-

cies, without any litigation or delay; while it is evident that great embarrassments might have been in the way of their recovering any portion of those legacies during the lifetime of the widow, had the defendant placed himself upon his legal rights. Besides, the personal property which under all the provisions of the will taken together, was the proper fund for the payment of the legacies, has, by the consent of the widow, and the relinquishment of her right to the income thereof for life, been devoted to the payment of those legacies.

The vice chancellor, in his opinion, seems to have entirely overlooked this latter point; although that point was made and fully discussed before him, and the authorities cited. And the vice chancellor's views are erroneous in regard to the point upon which alone he appears to have decided the case. The answer is a plain conscientious disclosure of all that could make against the defendant. All fraud is denied, and there is, upon the whole view of the case, as made by the bill and answer, a most evident moral propriety and justice in the arrangement made between the parties which produced the releases in question. It is hardly to be credited, and the complainants could not have believed, that the testator ever intended to charge the defendant and his younger brother with the payment of $5000 in legacies, for which no provision to the amount of one cent was made by the testator, until after the death of his widow. Without the application of the personal property, the remainder in the real estate, as before suggested, would have been scarcely sufficient to pay the legacies, and probably would not have sold for enough. It is fairly to be inferred that this view of the subject presented itself to the complainants, and was acted upon by them when the releases were executed. It was this view, undoubtedly, coupled with the opinion that the personal estate was primarily liable, which induced the counsel, referred to in the defendant's answer, to give him the advice they did in relation to procuring the releases.

*A. Vanderpoel,* for respondent. I. John and George Van Hoesen are, in respect to the estate devised to them by the will

Hoes v. Van Hoesen.

of their father, chargeable with the payment of the legacies to Lambert and the daughters. And the personal property not bequeathed to John and George was exonerated from the payment of the same.

It is a rule both of law and equity, that where the will does not show an intention to exonerate the personal estate, legacies are payable first out of the personalty. But it is equally well established, that where the intention of the testator to exonerate the personal property is evident it must be exonerated. And it is the duty of the court to collect from the whole will, whether the testator did, or did not, intend to exonerate his personal property. (*Kelsey* v. *Deyo*, 3 *Cowen's Rep.* 133. *Harris* v. *Fly and others*, 7 *Paige's Rep.* 421. *Burton* v. *Knowlton*, 3 *Ves.* 106, 107. *Tole* v. *Hardy*, 6 *Cowen*, 333.) The mere act of charging real estate with a legacy is not sufficient of itself to exempt the personal property. But a charge of the real estate, accompanied by such a disposition of the personal property that it cannot be applied to the payment of the legacies without doing violence to the intention of the testator, has, in all the cases cited by me, been held sufficient to exempt the personal property. All the authorities now agree, that it is the duty of the court to collect from the whole will an intention to exonerate the personal estate. And that express words to exempt it are not necessary. I have looked into the English, as well as all the American cases that have fallen within the range of my research, and am constrained to say that I have found this question no where more ably argued than it was by Messrs. Sudam and Ruggles in *Kelsey* v. *Deyo*, (3 *Cowen*, 133.)

It is said that the widow, too, is entitled to the use and income of the whole of the real estate for life, and that therefore the real estate cannot be deemed to be charged, and the personal discharged from the payment of legacies. To this I answer, 1. That in this case the charge was not only upon the real estate, but a personal charge upon the devisees John and George Van Hoesen, in respect to the estate devised to them. It was optional in them to accept, or to reject, the devise. If they accepted it, as they did in this case, they took it *cum onere*. They

Hoes *v.* Van Hoesen.

accepted it upon the condition of paying the legacies; a duty imposed upon them in respect to the estate devised to them. Where, then, is the hardship upon the defendants; when it was optional with them to accept or repudiate the devise to them? 2. In no aspect of the case was any hardship imposed upon the devisees. If they resolved to pay the legacies, they had a farm worth $10,000, and personal property worth $1000, subject to the life interest of their mother therein. The legacies amounted to $5100. The estate devised to them was worth more than double that amount. But for the mother's life interest, and subject to that interest, the shares to John and George were each worth vastly more than the $700 given to each of the daughters. 3. I am not prepared to admit that equality or inequality, reasonableness or unreasonableness in the disposition of a testator's property forms any just or legal criterion by which to judge of his intention. But if it were so, I should deny that in assuming the personal property in this case to be discharged from the legacies, John and George would receive such an inadequate share of the testator's bounty as to justify the belief that the testator intended, in effect, to give them the personal property also.

Again; the charge here was not only on the estate, but on the persons of the devisees, in respect to the estate devised to them. And if there had been no words of inheritance, the devisees would have taken a fee by implication. (*Jackson* v. *Ball*, 10 *John.* 155.) The court is familiar with the doctrine that where the charge is on the estate, and there are no words of limitation, the devisee takes an estate for life only; but where the charge is on the person of the devisee in respect to the estate in his hands, he takes a fee by implication. (*Jackson* v. *Embler*, 14 *John.* 198.) 4. The analogy between this case and the case of *Kelsey* v. *Deyo*, (3 *Cowen*, 133,) is most striking. There the devisee was charged, even in a court of law, with the payment of the legacy; and the personal property was held to be discharged. The *will* there gave to N. Kelsey all the testator's real estate, and it gave legacies of £100 each, to three of the daughters, Mrs. Deyo, the wife of the plaintiff, being one of them; which legacies he directed his son Nathaniel to pay. To his

wife, as in this case, he gave his personal property, for her natural life. The action there was assumpsit, against the testator's son Nathaniel, as devisee, charged with the payment of the legacy. It was then on all fours with this case. The distinguishing characteristic of the cases cited on the other side, is that in all of them the legacies were left, or ordered, to be paid by the executors or trustees. Here, as in the case of *Kelsey* v. *Deyo*, the legacies are ordered to be paid, not by the executors, but by the devisees, as such; only one of which devisees was an executor. In *Tole and wife* v. *Hardy*, (6 *Cowen*, 333,) it was decided that the personal estate was not exonerated from the payment of the legacy, by the terms of the will. For although the real estate was probably charged, yet the personal property was not so disposed of as to put it beyond the power of the executor to apply it to the payment of the legacy. That was the distinguishing feature between the two cases. And see Judge Woodworth's opinion, as to the inadmissibility of evidence to show an intent, on the part of the testator, different from the legal construction of the will. In *Watson* v. *Buckwood*, (9 *Vesey*, 456,) it was held that it was too late to say that it was not open to the court to collect from the whole will, an intention to exonerate the personal estate, though that intention was not expressed in any positive or conclusive words. In *Webb* v. *Jones*, (2 *Br. Ch. Cas.* 60,) it is said that the general rule is very clear that the personal estate is the fund first liable, and that the executors cannot exonerate it without first substituting another fund. But there is no magic in words. No peculiar form of expression is necessary in order to exonerate the personal estate. If the intention of the testator to exonerate the personal estate be evident, it must be exonerated. If the personal property was exempted from the payment of these legacies, then the complainants, upon the death of Mrs. Van Hoesen, had a clear and indisputable claim to a distributive share of the personal property.

II. The rights of the complainants are not barred by the releases which are set up in the answer. 1. They cannot, especially the release of Hager, be construed to cover the claim in question. They must be construed to relate only to the then

present interests of the parties.    2. The parties had in contemplation only their legacies, when the releases were given; and the claims for which this suit is brought were not contemplated by the releasors.    3. The defendant suppressed, and forbore to communicate, knowledge of which he was possessed in respect to the rights of the complainants.    It was a *suppressio veri,* which vitiated the release so far as it regarded this claim.    4. The release, in respect to this claim, was fraudulent and without consideration.    No consideration having passed except the payment of the legacies, and the complainants when the releases were executed were ignorant of the rights which they are now prosecuting.    5. In these releases, especially the one given by Mrs. Hoes, there is a particular recital, showing the inducement or occasion that led to the releases, viz. the payment of the legacies. The general words afterwards inserted were controlled and limited by this recital.    6. It was not competent for the complainant, Hager, when his release was executed, to release the rights or claims for which this suit is brought.    7. Courts of equity will always look with jealousy at releases given by wards to guardians, by legatees or distributees to executors, and will not easily permit them to bar the real rights and interests of the parties.

In viewing this case the court will regard the relation of the parties, as well as their sex.    The relation of guardian and ward, executor and legatee, trustee and cestui que trust, implies a solemn obligation on the part of the guardian, executor, or trustee, to deal with most scrupulous integrity with the other parties; to communicate to them all information that may affect their interest.    And if there appears the slightest ground for suspicion of overreaching, no receipts, releases, or deeds, are ever regarded, in this court of conscience, as bars to the real rights of the parties. This court will always open the accounts of the parties, where an executor, trustee, or guardian, has taken releases without adequate consideration, or without the most perfect good faith. The extreme length to which courts have gone in disregarding releases to parties standing in this relation, shows the jealousy with which they are regarded.

The phraseology of the releases deserves consideration.    1. As

Hoes v. Van Hoesen.

to the release of Mrs. Hoes. By whom does this payment purport to have been made? By the executors, by the parties who it is said, were bound to apply the personal property to the payment of these legacies? No: but by John and George Van Hoesen, the devisees. It expressly recites that John and George have paid the legacy of $700. This shows the sense of John under his then recent instructions received from Judge Vanderpoel. 2. As to the release given by Hager, as late as March, 1833. While this release does not exhibit the error of acknowledging payment from the devisees, it shows one equally fatal. It releases, and can only be construed to release a present interest. One which was then perfect. It releases the executor "from all claims and demands that I ever had, or now have, in right of my wife, of, in, and to the personal property of which M. V. H. died possessed." It releases, then, nothing more than the then present interest of the legatee; as we hope to show from authority. The defendant relies upon the general words, smuggled into these releases, at the suggestion of the defendant's friend and counsel, without communicating to the releasor the information which that counsel had given him. Generally, words in a release may be restrained by the particular occasion of giving it. (*Thorpe* v. *Thorpe*, 3 *Levinz*, 273. 1 *L. Ray.* 235, 236.) What was the occasion of giving this release? The payment of the $700 legacy, and none other. Here is a case in point. A release of a legacy, and of all actions, suits and demands whatsoever. These general words which follow are tied up by the legacy, and release nothing else. (*Cole* v. *Knight*, 3 *Mod.* 277.) By referring to that case, the language will be found stronger than in either of these releases. The defendant acknowledged to have received £5, being a legacy, and then in general words he released the said Cole and wife, of the legacy, and of all actions, suits, and demands whatsoever, which he had or might have against the defendants, Cole and his wife, as executors of J. L., or which he might or could have, for any matter or thing whatsoever. The words are as strong there as in this case, yet the release was held not to have released a debt other than the legacy. Where there is a particular recital in a release, and the general

words follow, the general words shall be qualified by the particular recital. Thus if a release acknowledge the receipt of £10, and thereof acquits and discharges the person of whom it is received, and also of all actions, debts, and demands; by the release, nothing is discharged but the £10. Such a release was held to discharge a judgment only, although it contained the general words, in full of all debts, demands, judgments, executions and accounts of whatever nature, in law or equity. (*Jackson, ex dem Rosevelt,* v. *Stackhouse,* 1 *Cowen,* 126.)

In *McIntire* v. *Clark,* (1 *Edw. Ch. Rep.* 34,) Vice Chancellor McCoun says, "It is a strong rule of equity that a release should be confined to what was under consideration at the time of giving it." And it was there held, that the general words in a release, of all claims and demands whatsoever, were to be restricted to the subject matter of the release. If a receipt be given for £10, in which there is a release of all actions, debts, and demands, nothing is released but the £10. (*Cole* v. *Knight,* (3 *Mod.* 277.) It has also been held that a general release shall not bar what is future. (*Porter* v. *Philips, Croke Jac.* 623.) Although the release is general of all actions and demands, yet that doth not discharge what is future, and whereof he hath not any cause of action at the time the release was made. That principle is entirely fatal to the release of Hager. That purports to release nothing more than a present interest. Consider the occasion, the consideration only $700, and then determine whether, according to the authorities, any thing but a present interest was released. There is a reason for construing this as releasing nothing but a present interest which did not exist in any of the cases cited. What did the husband Hager release? A chose in action? Hardly. If a chose, it was surely one which he could not reduce to possession. It is more than questionable whether the husband could release this interest of the wife at all;—an interest depending upon the death of the mother; and one which the husband could not receive. Suppose the husband Hager had died before the death of the widow, this right would surely have survived to his wife; because it was not reduced to possession in

Hoes v. Van Hoesen.

the lifetime of the husband. Suppose Hager had survived his wife, but had died before the death of old Mrs. Van Hoesen. It. is by no means certain that the administrator of the husband would be entitled to the interest of the wife in this personal property. Where a release contains introductory matter explaining the facts, the release, though in general terms, must be controlled by the previous recital, and the court will give such an effect to it as may best consist with the manifest intention of the parties and the real justice of the case. (2 *Saund. Plead. & Ev.* 320. 5 *Barn. & Adol.* 609. 2 *Maule & Selw.* 423.) These remarks are made to show the impropriety of construing this as releasing any thing other than a present interest. So a release of all demands will not release a thing which, at the time of the release, is not demandable; or where a thing is to be done on a condition precedent, a release of all demands given before condition performed does not discharge it; for before that it does not lie in demand. (*Thorpe* v. *Thorpe*, 12 *Mod.* 460.)

Again; the releases in this case are void, because the defendant withheld material information from the legatees; and they did not know what they released. The first case to which I would call the attention of the court is *Salkeld* v. *Vernon*, (1 *Eden's Rep.* 64.) There the rule, which may be found in a variety of other cases, is thus stated by the Lord Keeper: "No rule is better established than that every deed obtained on *suggestio falsi*, or *suppressio veri*, is an imposition in a court of conscience. The release here was drawn by the attorney, plainly for the benefit of the releasee. The first question is whether the releases, or either of them, are bars to the account prayed? And that will depend upon the manner in which the releases were obtained. Now a release, *ex vi termini*, imports a knowledge in the releasor of what he releases, unless, upon a solemn composition for peace, persons expressly agree to release uncertain demands. Was the release in the present case the result of a composition for peace? No. Did the parties agree to release their rights, as heirs, or distributees, as uncertain demands? They were not even the subject of conversation. One party had them in his mind, and the other, the releasors, never

thought of them. In *Jarvis and wife* v. *Drake*, (1 *Vern.* 19,) the Lord Chancellor says, that it is a constant rule that where there is either the suppression of truth, or the suggestion of falsehood, the release shall be avoided. If a release is given on a particular consideration recited, notwithstanding that the release concludes with general words, yet the law, in order to prevent surprise, will construe it to relate to the particular matter recited. What was the particular matter recited here? The $700 legacy and nothing else. *Gee* v. *Spencer*, (1 *Ves.* 32,) is a case where a release was set aside on account of the misapprehension of the party executing it. And that is a much weaker case than the present. There is also a note to that case which goes to show the facility with which courts of equity presume imposition, or ignorance, where a party has released an important right, or interest.

THE CHANCELLOR. If the vice chancellor was right in supposing that the releases were invalid, and that the legacies were not primarily chargeable upon the interest of the testator in that part of the personal estate which was not disposed of, by the will, after the termination of the widow's life estate therein, the decree is wrong as to the portions of the unbequeathed interest to which the complainants are entitled. Where a reversionary interest in personal property is not disposed of by the will of a testator, it does not necessarily belong to those who may happen to be his next of kin at the termination of the particular estate or interest in such property, which is bequeathed by him. But, as an interest in property undisposed of by the will, it belongs to the widow and next of kin of the decedent, who were entitled to the distributive shares in such unbequeathed interest at the death of the testator. And if any of them have died without having disposed of their interests therein, their shares go to their personal representatives, as a part of the personal estate of such decedents. Here, if there was an interest in the personal property undisposed of, one third of that interest belonged to the widow of the testator; and her executors or administrators alone can call upon the defendant for the payment thereof.

Hoes *v.* Van Hoesen.

Again; the widow being entitled to one third of the reversionary interest, if any there was, in the personalty not disposed of by the will, in addition to her life estate in the whole personal property beyond what was necessary to pay the debts and funeral expenses of the testator, she was, immediately upon his death, the absolute owner of the one third of the personal property; except that part thereof which was bequeathed to the two sons of the testator, after her death or remarriage. She might, therefore, with the assent of the executors, dispose of that third of the residuary property in any manner she pleased. And it appears by the answer of the defendant, that she did, long before her death, relinquish her interest in such residuary property; and consented that it might be applied by him to the payment of the legacies. And it was appropriated accordingly. This statement in the answer, is also responsive to that part of the bill which called upon the defendant to answer and discover what property the testator owned at the time of his death, and what disposition had been made of the same. And for the purposes of this suit, it must be taken to be true. The complainants, therefore, could not, in any view of this case, be entitled to more than two sixths of two thirds of the residuary estate; with interest thereon from the death of the widow. And if she died intestate, and they wish for an adjustment of the accounts between the defendant and her estate, they must take out letters of administration, and make their claims against him in the character of her personal representatives.

The release executed by Mrs. Hoes, before her marriage, appears on its face to be valid and effectual to extinguish all claim which she then had, or might thereafter have, against the executors, or against the defendant, for or on account of the personal estate of her deceased father. And her interest in the personal estate after the death of the widow, if she had any such interest, was absolutely vested in her immediately upon the death of her father; although it could not vest in possession during the life and widowhood of her mother. It was therefore an interest which she could release at any time; and was extinguished by the release of December, 1818, if that release was not obtained

fraudulently or unfairly.   It is unquestionably the general rule
that if there is a particular recital in a release, and nothing ap-
pears on the face of the instrument to show that any thing
beyond the matter of such recital was intended to be discharged,
general words of release following such recital will be qualified
by the recital; so as not to discharge other claims which were
not in the contemplation of the parties.  (*Knight* v. *Cole,* 1
*Show. Rep.* 150.  *Ramsdell* v. *Hylton,* 2 *Ves. sen.* 310.  *Lyman*
v. *Clark,* 9 *Mass. Rep.* 235.)   But the construction of the re-
lease must depend upon the language of the instrument itself;
and extrinsic evidence cannot be resorted to for the purpose of
showing the intention of the party by whom such release was
executed.  (*Butcher* v. *Butcher,* 1 *New Rep.* 113.   *Van Brunt*
v. *Van Brunt,* 3 *Edw. Ch. Rep.* 14.)   In this case, the release,
upon its face, does not appear to be limited to the claim for the
legacy.   On the contrary, the release contains a nominal con-
sideration, in addition to the amount of the legacy; and for that
consideration in addition to the payment of the legacy and
interest, she declares that she has received her full share and
proportion of the real and personal estate of her deceased father.
And she not only releases the devisees, who are personally
charged with the payment of the legacy, but also the executors
and executrix, of and from all claims which she had, or might
have, in or to any part of the estate.   The answer, which is
responsive to the bill in reference to the charge that the release
was obtained by fraud and circumvention, also shows that it
was in pursuance of a family arrangement.   By such arrange-
ment, the widow consented that the personal estate, in which she
had a life interest, and in which property the reversion was not
specifically disposed of, should be appropriated as a fund for the
payment of these legacies.   And Maria agreed to receive her
legacy and to execute to the devisees, and to the executors, a full
and absolute release of all claims upon the real or personal estate.
As the complainants chose to call for the defendant's answer, on
oath, in relation to the alleged fraud in obtaining these releases,
instead of attempting to prove the same by witnesses, or of call-
ing upon the subscribing witnesses to prove the circumstances

under which such releases were given, the defendant is entitled to the full benefit of his answer, in explaining those circumstances, to rebut the charges of fraud and imposition contained in the bill.  It is also proper to observe that there is no admission in the answer that the defendant was advised, by his professional friends, that the daughters would be entitled to their distributive shares in the personal estate after the death of the widow; though I infer from the defendant's answer, and from the fact that he was advised to take releases to prevent future difficulty, that he had been informed the will might bear such a construction.  But the principal point in which the will was supposed to be different from the actual intention of the testator, was in not appropriating the moneys at interest, and other personal property not fully disposed of by the will, to the payment of the legacies during the life of the widow; instead of charging them upon John and George personally, without furnishing them any means of payment during the life of the widow, except by sacrificing the whole of their future interest in the farm and stock and farming utensils.  None of the parties claiming under the will had a right to prove a mistake therein, for the purpose of altering their respective interests in the testator's estate, or of giving a different construction to its provisions.  But if the members of this family were satisfied, from the information of those who were present when the directions for drawing it were given, that such a mistake had occurred, that circumstance might account for the giving of these releases without any actual consideration therefor; and would be a strong circumstance to rebut the presumption of fraud in obtaining them.

  I infer from the expression in the release of Hager, reciting that it was given in consideration of $700 *theretofore* paid him by the defendant, and from the allegation in the bill that the legacy was paid a *long* time before the death of the widow, that the release executed by Hager was not in fact given at the time the legacy was paid; but that it was subsequently executed. If so, it would corroborate the defendant's allegation, in the answer, that previous to the payment of the legacy Hager had agreed to receive the same, and to execute a full and absolute

Hoes v. Van Hoesen.

release of all claims upon the real and personal estate of the testator; and that the release was subsequently executed in pursuance of his previous agreement. But as the release was actually executed before the death of the mother, it may admit of some doubt, from the conflict of authorities on the subject, whether the language of the release was sufficient to reach a then vested interest in personal property, but which interest could not be reduced to possession during the life or widowhood of the testator's widow. It therefore becomes necessary to examine the question, whether these legacies were chargeable exclusively upon the devisees, and upon the property specifically devised and bequeathed to them in remainder after the death or remarriage of the widow, in exoneration of the supposed reversionary interest in the personal estate undisposed of by the will; or whether such reversionary interest was the primary fund for the payment of such legacies.

I agree with the present Lord Chancellor of Ireland, that the soundest and most sensible rule of construction, both as to debts and legacies, would have been, that if there are express words of dedication of a portion of the real estate for the payment of debts or legacies, and the testator has disposed of all his personal estate specifically, the fund which the testator has himself provided for the purpose should be deemed the primary fund. The current of the authorities, however, is certainly the other way so far as relates to the payment of debts, at least. (*Fereges* v *Robertson, Bunb. Rep.* 301. *Waller* v. *Jackson, Idem,* 303, *n Aldridge* v. *Lord Wallscourt,* 1 *Ball & Beatty,* 312. *Ancaster* v. *Mayer,* 1 *Bro. C. C.* 460. *Stephenson* v. *Heathcote* 1 *Eden's Rep.* 38. *Howe* v. *Dartmouth,* 7 *Ves. Rep.* 149 *Watson* v. *Birchwood,* 9 *Idem,* 447. *Bootle* v. *Blundell,* 1 *Mer. Rep.* 193.) It is also the general rule that the personal estate is the primary fund for the payment of legacies, although such legacies are charged upon real estate; whether such real estate be devised with a direction to the devisee to pay the legacies, or is charged with such legacies, or given to trustees for that purpose. (*See* 1 *Roper on Leg.* 163, *and cases there referred to.*) But in reference to legacies, an absolute disposition

of all the personal estate of the testator, and not a mere residuary bequest, is sufficient to manifest the intent of the testator to charge the realty, in exoneration of the personalty. Thus in the case of *Kelsey* v. *Deyo*, (3 *Cow. Rep.* 133,) where the testator bequeathed his whole personal estate, after payment of debts, to his wife for life, with remainder to all his children at her death; and then devised all his real estate to his son N. in fee, subject to certain privileges therein in favor of the widow; and directed him to pay certain legacies, one half thereof in two years after the testator's death and the other half in two years after the death of the widow; and made the devisee and other persons executors; the supreme court held that it was manifest from the will that he meant to exonerate the personal estate. But in the subsequent case of *Tole* v. *Hardy*, (6 *Cow. Rep.* 333,) where the testator directed that his widow should be maintained out of his estate, and that she should have all his furniture &c., and then devised his real estate to his son in fee, and directed him to pay certain legacies, and appointed the widow executrix and the devisee the executor of the will; the same court held that the personal estate, not specifically bequeathed, was not exonerated, and was the primary fund for the payment of the legacies; although the devisee was also charged with the payment, in respect to the land devised to him. And I have not been able to find any case, where the personal estate was not in terms exonerated, or the legacies declared to be chargeable upon the real estate exclusively, in which an interest in personal property not disposed of by the will was held to be exonerated. On the contrary, it appears to be settled that where the personal estate is in terms exonerated, for the benefit of a particular legatee, and not for the benefit of such estate generally, the failure of the particular bequest destroys the exoneration pro tanto. (*Ward's Law of Leg.* 357.)

It is not necessary to express an opinion upon the question, whether the life interest of the widow in the part of the personal estate not disposed of by the will, in the present case, was in fact exonerated from the payment of the four legacies, to the testator's son Lambert and to the three daughters. But upon an ex-

amination of the decisions of the courts, both here and in England, I am satisfied that the reversionary interest in a part of the personal estate, which interest was not disposed of by the will, was the primary fund for the payment of those legacies; and in aid of the charge upon the farm, and upon the reversionary interest of the devisees in the stock and farming utensils. And as the personal property not disposed of by the will, was wholly insufficient to pay these legacies, with interest thereon from the time they became payable until the death of the widow, it follows that the complainants had no interest in the estate of the testator, beyond the amounts due upon their legacies, which could be affected by these releases.

The decree of the vice chancellor must therefore be reversed; and the bill of the complainants must be dismissed, with costs.