JACOB REISS, Plaintiff, *v.* VELLEMAN & CO., INC., Defendant.

Supreme Court, New York County, June, 1922.

**Bankruptcy — composition agreement — good faith — party cannot benefit by secret reservation — fraud — assignment — when debtor not liable on undisclosed note.**

All parties to a composition agreement are to be held to the most scrupulous good faith and a creditor who was a party thereto will not be permitted to make a secret reservation of a part of his claim from the operation of the composition or to stipulate for a secret advantage over the other creditors.

A promissory note for $4,400 signed by the defendant as maker was indorsed by plaintiff's assignor and discounted with the bank. Plaintiff's assignor at the time both of the indorsement and of the payment of the note was the president of the defendant. Before the note matured the maker found itself in financial difficulty and at a meeting of its creditors held six days after a petition in bankruptcy had been filed against it a proposition was received from one M., by the terms of which he was to furnish a certain sum of money and the creditors, with certain specified exceptions, were to receive thirty-three and one-third per cent of their claims. In accordance with an agreement reached at that meeting a petition was presented to the bankruptcy court, verified by defendant's president, stating that a compromise had been arranged with all the creditors on a basis of thirty-three and one-third per cent, to be paid in cash, and it being made to appear that all the creditors had agreed to the compromise an order was granted dismissing the proceedings in bankruptcy. On the day that said order of dismissal was granted the $4,400 note, which was not specifically mentioned in any of these documents, matured, and on the same day, but after the granting of the order of dismissal, the president of the bankrupt, who was liable as indorser, arranged with a member of the creditors' committee, who was an official of the bank which discounted the note, to take it up by borrowing from said bank the necessary funds on his individual new note, secured by the same collateral. It so happened that this collateral was the property of the

plaintiff herein, but that part of the transaction was with his express consent. nor did he ever make any claim on account of his ownership of the collateral until after the filing of the petition for the dismissal of the bankruptcy proceeding although his firm, as a merchandise creditor, had taken part in all the proceedings. The new note was not paid at maturity except by the sale of the collateral and subsequently the maker of this note assigned to plaintiff the cause of action which he, as indorser, had against the maker of the $4,400 note. M. made the payments to creditors called for by the composition agreement, acquired from the maker of the new note the outstanding shares of defendant's capital stock and is now its president. In an action to recover from the maker of the $4,400 note which plaintiff's assignor had paid at maturity the defense was a charge of fraud arising out of the compromise with creditors. *Held*, that all liability of defendant arising out of the execution of the note in suit was terminated by the compromise of its other debts.

The failure of either the maker of the new note or the bank which discounted the note in suit or plaintiff, the owner of the collateral, to disclose to the other creditors the existence of the $4,400 note at the time the compromise agreement was reached was such fraud as to bar the action, and a verdict in favor of defendant will be directed pursuant to the stipulation entered into at the close of the trial.

ACTION to recover on a note.

*Strasburger & Schallek,* for plaintiff.

*Joseph S. Weinberger (Thomas T. Reilley,* of counsel), for defendant.

MARSH, J. The plaintiff's assignor indorsed a promissory note of the defendant and paid it at maturity. This action is brought to recover from the maker the amount so paid. The defense is a charge of fraud arising out of a compromise with creditors. The note was for $4,400, dated January 2, 1919, payable May 3, 1919, signed by the defendant as maker, indorsed by the plaintiff's assignor and discounted with the Citizens' National Bank. David Krauskopf, the plaintiff's assignor, was president of the defendant at the time both of the indorsement and of the payment of the note. Before the note became due the defendant found itself in financial difficulties, and on February nineteenth a meeting of creditors was held and a committee of four was appointed to look after their interests. The next day a petition in bankruptcy was filed against the defendant in the United States District Court. On February twenty-sixth another meeting of creditors was held and a proposition was received from one Mayer, by the terms of which the latter was to furnish about $20,000, and the creditors, with certain specified exceptions, were to receive thirty-three and one-third per cent of their claims. The total debts at that time amounted to about $60,000, of which $20,000 was owed to the Chemical National Bank, $19,400 (including the note of January second) to the Citizens' National Bank, and over $20,000 in small amounts to more than one hundred merchandise creditors. The

committee were present at this meeting, as well as Mayer, Krauskopf and others. It is true that Krauskopf denies that he was present, but he is contradicted by two other witnesses, and it is clear that he was acquainted with the whole transaction. Mayer's proposition was accepted and a memorandum of its provisions was signed by Mayer and the committee. This memorandum mentioned two attached lists of creditors, to which was appended an affidavit by Krauskopf that they embraced all of the debts and obligations of the defendant. They did not in fact embrace any of the bank claims, but it was well known that the two banks were creditors to some extent, because their representatives were elected as two members of the committee. The full amount of the bank claims, however, was not disclosed at this time, and it is that fact which constitutes the basis of the defense to this action. No mention was made either in the documents or otherwise at the meeting of the $4,400 note held by the Citizens' Bank, and on which Krauskopf was indorser, and the memorandum is expressed in such language as to convey the idea that the claim of the Citizens' Bank was limited to another note for $15,000. After providing that the sum received by Mayer should first be used for certain operating bills and bankruptcy expenses, and then for paying thirty-three and one-third per cent to the creditors on the attached lists, the memorandum states that " the balance of said sum will be divided *pro rata* between the Chemical National Bank and Citizens' National Bank of New York, in the ratio of $20,000 and $15,000, respectively, but not exceeding thirty-three and one-third per cent of their claims. Any surplus is to be distributed among the creditors *pro rata.*"

The agreement reached on February twenty-sixth also provided for a dismissal of the bankruptcy proceedings. Accordingly, on March third a petition was presented to the District Court by the defendant, verified by Krauskopf as its president, stating that a compromise had been arranged with all the creditors on a basis of thirty-three and one-third per cent to be paid in cash, and asking for the dismissal of the bankruptcy petition, which was thereupon granted by an order which recites that it appears that all the creditors have agreed to accept one-third of their claims. The $4,400 note is not specifically mentioned in any of these documents. On the same day on which these court proceedings took place the $4,400 note matured. Early in the day Krauskopf, who was liable as indorser, had a conversation with the same official of the Citizens' Bank who was a member of the creditors' committee, but it does not appear that this conversation was made known to any one else. Later, after the granting of the order of dismissal, Krauskopf arranged with this same official to take up the note by borrowing

from the bank the necessary funds on his individual new note, secured by the same collateral. It so happened that this collateral was the property of the plaintiff in this action, but that part of the transaction was with his express consent, nor did he ever make any claim on account of his ownership of the collateral until after March third, although his firm, as a merchandise creditor, had taken part in all the proceedings. Krauskopf's new note was not paid at its maturity except by the sale of the collateral, and subsequently Krauskopf executed to the plaintiff the cause of action now sued upon. Mayer made the payments to creditors called for by the agreement of February twenty-sixth, acquired from Krauskopf the outstanding shares of the defendant's capital stock and is now its president.

The failure of either Krauskopf or the Citizens' Bank or Reiss, the owner of the collateral, to disclose to the other creditors the existence of the $4,400 note at the time the compromise agreement was reached is relied upon by the defendant as a bar to this action. It is not claimed that the proceedings in the District Court operated as a technical composition in bankruptcy. The position is based on a broader doctrine, which has been expressed by the Court of Appeals in the following language: " The defendants, for defense to this action, invoked the well-established principle that a creditor who is a party to a composition between a debtor and his creditors, or who assents thereto, is not permitted to make a secret reservation of a part of his claim, from the operation of the compromise, or stipulate for a secret advantage over the other creditors. The law exacts of all the parties to a composition the most scrupulous good faith. It enforces a wholesome morality and inculcates the principles of honest and fair dealing, by defeating any advantage attempted to be gained, either by working upon the necessities of the debtor, or by colluding with him. It will not permit a part of debt withheld from the arrangement, to be enforced, and it will compel the cancellation of securities, received in violation of the principle of equality." *Almon* v. *Hamilton,* 100 N. Y. 527, 532.

The principle so expressed was first enforced in this state in the early case of *Russell* v. *Rogers,* 10 Wend. 474, where it is said: " The ground is, that upon the face of the composition deed the creditor assumes to compound for the whole of his demand, and the other creditors, therefore, have a right to believe that the sum set opposite his name comprises that amount and to take this fact, with others, into consideration, in forming their judgment as to the propriety of entering into the arrangement; and to allow him subsequently to set up a debt concealed, and in contradiction of the face of the deed, would be a violation of good faith, and a fraud

upon the other creditors." Pp. 478, 479. The same view was taken the next year in chancery in *Van Brunt* v. *Van Brunt,* 3 Edw. Ch. 14, the court saying: " Good faith, then, required that each creditor coming into the arrangement and professedly submitting the whole of his debt or demand to its operation should be bound to the full extent. His example probably served as an inducement to others to subscribe to its terms; and after holding out such an example or after professing to act a generous part towards his debtor — although he might have been the last who actually signed the composition deed — he shall not be permitted, by any private agreement with his debtor, to reserve to himself a part of his debt or hold any claim against him for further payment, or to stipulate for anything better in the shape of security or otherwise than other creditors receive, and with whom he makes a common cause." P. 18. The doctrine of these cases had already been developed in England. *Holmer* v. *Viner,* 1 Esp. 131; *Britten* v. *Hughes,* 5 Bing. 460; *Leicester* v. *Rose,* 4 East, 372; *Ex parte Sadler and Jackson,* 15 Ves. Jr. 52. It has since been frequently affirmed and applied. *Breck* v. *Cole,* 4 Sandf. 79; *Gilmour* v. *Thompson,* 6 Daly, 95; *White* v. *Kuntz,* 107 N. Y. 518; *Hanover Nat. Bank* v. *Blake,* 142 id. 404; *Weinstein* v. *Schneider,* 118 Misc. Rep. 253. The same policy is expressed in the Bankruptcy Act, under which a formal composition in bankruptcy discharges not only the debts that are proved, but all that are provable. §§ 14-c, 17. Whether or not it be true, as stated in Collier on Bankruptcy (12th ed. vol. 1, p. 316) that " a practice of compromising debts outside of the proceedings in bankruptcy, which is sometimes attempted in an informal way, should be condemned," it cannot be intended that such condemnation should take the form of confirming a fraud.

The facts of the case now under consideration bring it within the principles of the cases referred to, and all liability of the defendant arising out of the execution of the $4,400 note must be considered terminated by the compromise of its other debts. None of the special circumstances relied on by the plaintiff is sufficient to make this case an exception. Even if the plaintiff's assignor's immediate cause of action was not upon the note itself and was not complete until after payment of the note (*Blanchard* v. *Blanchard,* 201 N. Y. 134), so that technically he was not a creditor at the time of the compromise, nevertheless his claim depends upon the existence of the note as a valid liability at the time he paid it. He had full knowledge of everything that was done. The bank could well afford to omit this note from the compromise, provided it had a satisfactory understanding with the indorser, and it is immaterial

to this defendant whether Krauskopf had consented to the bank's course in advance or whether he paid voluntarily an obligation which he could have avoided on the ground that the primary debtor had been wrongfully released. Nor is the concealment of the note from the creditors as a group affected by the circumstance that on one of the documents attached to the petition of March third the figures $19,400 appear after the signature of the bank's representative. This document is one of several of similar import, authorizing the creditors' committee to settle on a basis of one-third. It does not appear when it was signed or to whom it was communicated. At most it conveys notice only to those creditors who signed later on the same sheet. If the knowledge of the other creditors is doubtful, the burden of proof is on the plaintiff. *Nole* v. *Abate,* 190 App. Div. 705; *Ex parte Sadler and Jackson,* 15 Ves. Jr. 52, 57. The personal knowledge of the bank's representative on the creditors' committee is of course not binding on the other creditors in view of the abundant testimony that no claim was made on the note at the creditors' meeting when the compromise was discussed and agreed to. The figure $19,400 was not used as a basis either of settlement or of distribution.

Finally, the plaintiff contends that the concealment of the note is immaterial: *First,* because Mayer, who advanced the money, learned the facts and protected himself before he made any payments; and, *second,* because the deceit of Mayer is unavailable to this defendant as he was not then one of its officers. In both of its branches this argument overlooks the essential feature of the fraud complained of, namely, that it is directed not against the debtor or against some person supplying the funds for settlement, but against the other creditors. The decisions indicate three reasons why an agreement for preferred treatment injures the other creditors. *First,* if there is a larger fund available as a source of immediate payment, all are entitled to share in it; *second,* when the creditors accept future obligations they are entitled to assurance that old claims have been limited or barred; *third,* even where the creditors take only cash and the present distribution of assets is equitable, but the business is expected to continue, the secret reservation of one claim for future payment prejudices prospective dealings.

" By consenting to a compositon the majority of the creditors indicate their conviction that it is to the best interest to forbear liquidating the debtor's estate. Liquidation would enable them to have the present cash equivalent of his assets applied on his debts, but, because the business has possibilities, because new interests,

with new capital are coming into it, or for other reasons, they may favor a composition that will enable the business to carry on. As a result of this proceeding a large corporation, temporarily embarrassed, may resume its business, with such assets and with such relief from its liabilities as promise future success. It thus goes back into its own trade seeking the credit customarily extended to those engaged therein as a necessity to a continuation of its business. * * * It is only fair that the new creditors should be allowed to deal with the debtor on the safe assumption that the total amount of its indebtedness has been reduced, as indicated by the proceedings in the bankruptcy court. Otherwise it could not obtain new credit, and the entire plan would be faulty and doomed to failure." *Jacobs* v. *Fensterstock*, 118 Misc. Rep. 266, 270, 271.

If entirely new creditors are entitled to protection, even more are those whose expectation of future trade has undoubtedly been a factor in securing the consent to compromise past debts. Their course, when based on sound judgment, tends to promote commerce and general prosperity.

A defense to this action having been established, a verdict is directed for defendant pursuant to the stipulation at the close of the trial.

Judgment accordingly.