The matrimonial relation of the parties having been established, there can be no question now as to the legitimacy of their offspring, the plaintiff and his sisters; for by chapter 531 of the Laws of 1895, passed May 3, 1895, it was enacted that "all illegitimate children whose parents have heretofore intermarried  *   *   *  shall thereby become legitimatized and shall be considered legitimate for all purposes. Such children shall enjoy all the rights and privileges of legitimate children,"—and that was the law of this state at the time of Townsend's death, April 24, 1896. Plaintiff, his sisters, and the defendant Snell claim as heirs of Townsend, and their heirship and rights to inherit real property situate here are governed and controlled by the law of our state at the time of his death. The language of the act is clear and unmistakable. It is that "such children shall enjoy all the rights and privileges of legitimate children." Plaintiff is entitled to judgment as prayed for in his complaint. Judgment for plaintiff.

(57 App. Div. 613.)

ROMAIN v. SWEET et al.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. LEASE—ASSIGNMENT BY LESSOR.
    An assignment by a lessor, setting over as security for $1,000 the lease, with provisions that the lessor empowers the assignee to collect the second installment of rent, amounting to $1,250, and, after deducting the $1,000, to render the surplus to the assignor, does not operate as an assignment of subsequent installments of rent, so as to prevent action by the lessor therefor.

2. SAME—RELEASE OF SURETY—CONSTRUCTION.
    A release to O., the surety on a lease by a bank, to which had been given an assignment of an installment of rent of $1,250 to become due under the lease, though in general terms, being followed by the words, "especially from all claim said bank may have under" said lease and assignment, and of said payment of $1,250, will be construed to apply only to the installment of $1,250.

Appeal from trial term, New York county.

Action by William G. Romain against Clayton E. Sweet and another, executors of James Orr, deceased. From a judgment on a verdict for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

John M. Gardner, for appellants.
Edward H. Murphy, for respondent.

RUMSEY, J. This action was brought against the defendants' testator in his lifetime to recover the last installment of rent due upon a lease made by the plaintiff to persons other than the defendants' testator, for the payment of which he had become surety. The lease was made on the 23d of April, 1891, for one year commencing on the 1st of May, at the yearly rental of $2,500, of which $625 was paid when the lease was made, $1,250 was to be paid on the 1st of August, 1891, and the remainder, $625, on the 1st of

November, 1891. The lessees went into possession under the lease of the property, which was a hotel at Asbury Park, N. J. The first installment of rent was paid. Before the second became due, the landlord, having occasion to borrow a sum of money from the Harlem River Bank, made an assignment of the second installment of the rent to that bank as collateral security for the loan. With respect to the assignment it is claimed by the defendants that it passed to the bank the entire interest in the lease, so that Romain had no other interest or rights in it, and for that reason he could not maintain this action. By the transfer Romain assigned, transferred, and set over to the assignee, to secure the payment of $1,000 lent by the assignee to him, the lease in question, with the provision that "the said William G. Romain does hereby empower and constitute him [the assignee] his certain agent or attorney to collect the second installment of rent, amounting to $1,250, and, after paying or deducting the said one thousand dollars therefrom, render the surplus unto the said William G. Romain, his executors, administrators, or assigns." It is not disputed that the amount due from Romain to the bank was $500, and not $1,000. The court below construed that assignment as a transfer of the second installment of rent as collateral security for the loan, and held that it did not operate as an assignment of the subsequent installment of rent so as to prevent the landlord from bringing an action to recover it. In that conclusion we concur. The assignment, being given as security for the debt, operated only as a mortgage upon the second installment of the rent, rather than as an absolute transfer of the whole lease. After default had been made in the payment of the second installment of rent, the assignee gave a power of attorney to Romain to collect it, in pursuance of which he caused an action to be brought against Orr to recover it. That action was subsequently settled by the payment to the bank of $500, being the amount due to it, and by the payment to its attorneys of a certain sum, which it is not material to consider here; and after that settlement the bank gave to Orr, the defendant, a general release in the usual form, followed by the words, "especially from all claim said bank may have under and by virtue of a certain lease or assignment made by one William G. Romain, of which said bank are the owners, and of a certain payment of $1,250, due August 1, 1891, under a certain lease made on or about April 23, 1891 [describing it], and for which payment said James Orr became surety." The defendants claimed that this was an absolute release to Orr of all liability as surety upon this lease, and that, after it was given, his liability ceased, not only as to the $1,250, but as to the subsequent installment. With this contention we do not agree. It is the settled rule that, where there is a general release, followed by a particular recital, the paper will be construed to apply solely to the particular matter. Jackson v. Stackhouse, 1 Cow. 122; 2 Saund. 48, note F. That was the rule which the court below properly applied in this case. Orr had notice of the assignment to the bank, and knew, therefore, that it only took the second installment of rent as collateral security for the payment of its note; and, know-

ing that fact, he must also have known that the bank could release nothing more than what it had acquired from Romain. The court below was correct, therefore, in concluding that the lease did not operate upon the last installment of rent, which accordingly still belonged to the plaintiff. In addition to these two defenses, the defendants also insist that the landlord, being bound by the lease to make repairs to the premises, refused to do so, so that for that reason the defendants were forced to abandon them on the 2d of September; and they claim that by the terms of the lease they were released from any further liability for rent under the clause which provided that, if the buildings should be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, the tenants should not be liable to pay rent for the time after such destruction or injury, and might thereupon quit and surrender possession of the premises. It was shown that the lessees abandoned the premises on the 2d of September, 1890. The court held that, if the premises became untenantable because of the failure of the landlord to comply with his contract and put them in repair, so that a condition arose which made it necessary for the tenants to remove, and they did so, the plaintiff must fail in his action. Finally, the question was submitted to the jury in this form: "You must determine whether, on or about the 1st of September, 1891, the hotel in question was, without fault of the tenants, in a condition so as to make it untenantable and unfit for occupancy, and by reason thereof the tenants left and surrendered it. If 'yea,' your verdict will be for the defendant; if 'nay,' your verdict will be for the plaintiff." No exception was taken to that part of the charge. The jury found a verdict for the plaintiff, and under the charge they must have found that the premises had not become in such a condition that they were untenantable, and for that reason the defendants fail also in that portion of their defense.

For these reasons we conclude that the judgment and order were correct, and must be affirmed, with costs to the respondent. All concur.

---

(58 App. Div. 80.)

MEEDER v. PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. INSURANCE—PAYMENT OF PREMIUM—ESTOPPEL.
   Where insurer wrote the beneficiary that a premium falling due on a certain date was paid, it was estopped from thereafter claiming any benefit by reason of nonpayment, and was in no position to invoke the rule that in an action on a policy, where the complaint alleges full performance of all its conditions, proof excusing the nonperformance is inadmissible.

2. SAME—ASSIGNMENT.
   Such estoppel operated in favor of the assignee of the beneficiary's rights under the policy.

3. SAME—FORFEITURE.
   Insurer, setting up a forfeiture of a policy for nonpayment of premium on a certain date, cannot take advantage of failure to pay premium falling due after such date.