LEON MITCHELL, Appellant, v. MICHAEL MITCHELL, Individually and as Guardian of LEON MITCHELL, Respondent.

*(Supreme Court, Appellate Division, First Dept., December 10, 1915.)*

GUARDIAN AND WARD—SUIT AGAINST GUARDIAN FOR ACCOUNTING—RELEASE OF CLAIMS CONSTRUED—LIMITATION OF ACTION AGAINST TRUSTEE.

Action against a guardian brought by his ward to compel him to account for a legacy which he had received as guardian and for which he had failed to account. The defendant, father of the plaintiff, who had been associated with him and another son in business, set up as a defense a general release of all claims against him executed by the sons. Release construed, and *held*, to refer only to claims relating to business transactions between the parties and not to release the claim against the father as guardian.

The general rule is that where a release contains a recital of a particular claim, obligation or controversy, and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby.

As the defendant was the guardian of an express trust, the Statute of Limitations did not begin to run against the claim of the ward until the guardian had accounted or repudiated the trust.

APPEAL by the plaintiff, Leon Mitchell, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 19th day of March, 1915, dismissing the complaint on the merits upon the decision of the court after a trial at the New York Special Term.

Harold Nathan, for the appellant.

Frederick L. Guggenheimer (Otto Horwitz with him on the brief), for the respondent.

LAUGHLIN, J.— On or about the 7th day of April, 1898, when the plaintiff was a minor of the age of about fifteen years, letters of guardianship were duly issued by the Probate Court

of the county of Suffolk, Mass., appointing the defendant, who is his father, his guardian, with authority to receive and take possession of all his property, and on the next day the defendant as such guardian received from the executors of the will of one Foss the sum of $500, bequeathed to the plaintiff.

The plaintiff alleges that the defendant brought the money so received by him as guardian for the plaintiff into the State of New York, where both parties now reside, and has never accounted therefor, although an accounting was duly demanded by plaintiff after he attained his majority and prior to the commencement of the action, which was brought for an accounting on the 7th day of August, 1914. The defendant admitted his appointment as guardian as alleged and the receipt of the money and that he had not accounted, and pleaded the six-year Statute of Limitations and a release of the cause of action. The defendant was likewise at the time appointed guardian of his son Bertram, who was about five years younger than the plaintiff, and he received a like amount for Bertram, for an accounting for which another action has been brought and the appeal has been argued and is to be decided herewith (170 App. Div. 458).

The two sons resided with their father until the death of their mother in November, 1913. The defendant testified that his son Bertram was employed by him on a salary in the woolen rag business, and that after the death of his wife a controversy arose which resulted in litigation between him and his son, but he did not specify which son, and that the litigation was settled by the execution of a release under seal on the 6th day of January, 1914, and the learned trial court found that it released the defendant from accounting as guardian.

The release is in the form of an agreement between Leon Mitchell as party of the first part, Bertram Mitchell as party of the second part, and Michael Mitchell as party of the third part. It contains preambles reciting that a business was being con-

ducted at the city of New York under the name " M. Mitchell,"
which the party of the third part claimed to belong to him
exclusively and the party of the first part claimed an interest
therein; that a dispute had arisen between the parties of the
first and third parts as to the ownership of the business and that
the parties had agreed to settle and adjust their said disputes.
It was provided that the agreement witnesseth that the party
of the third part agreed to pay the party of the first part $8,800
in the manner and at the times therein stated, and that the
party of the first part in consideration thereof agreed to receive
said payment in full settlement, satisfaction and accord.   The
next paragraph of the agreement provided as follows:

" In consideration of the foregoing, the said party of the
first part hereby agrees to receive the foregoing in full settle-
ment, satisfaction and accord of any and all claims and demands
of every nature and description whatsoever which the party of
the first part now has or heretofore has had against the party of
the third part, as well as any and all claims whatsoever to the
said business conducted in the name of ' M. Mitchell; ' and in
consideration of the foregoing, the said party of the first part
hereby sells, assigns, transfers and sets over unto the party of
the third part all his right, title and interest in and to any and
all of the merchandise, outstandings, cash in bank and other-
wise, as well as in and to all other assets of every kind, nature
and description to said business in any wise belonging or apper-
taining."

It was then provided in the agreement that the party of the
first part should deliver to the party of the third part certain
specified books and papers and all other books and papers and
property belonging or relating to said business and containing
a covenant on the part of the party of the first part with respect
to the amount of money he had withdrawn, collected or received
in the business, and with respect to the debts contracted therefor

by him.   Then followed the final paragraphs of the release preceding the witness clause, as follows:

"And the said parties of the first and second part, in consideration of the foregoing, and of the sum of One Dollar to them in hand paid by the party of the third part, receipt whereof is hereby acknowledged, do each hereby discharge and release the said party of the third part of, from and against any and all claims and demands of every nature and description, whether due or to grow due, which against the said party of the third part the parties of the first and second part may now have, since the beginning of the world to the date of these presents, other than those which may arise from or under the terms of this agreement.   And in consideration of the foregoing, the said party of the third part hereby agrees to assume and discharge all the debts and liabilities incurred in connection with the said business of M. Mitchell, and to hold the said party of the first part free and harmless therefrom; and in consideration of the foregoing, the said party of the third part does hereby discharge and release the parties of the first and second part, and each of them, of, from and against any and all claims and demands of every nature and description, whether due or to grow due, which against the said parties of the first and second part, or either of them, the party of the third part may now have, since the beginning of the world to the date of these presents, other than those which may arise from or under the terms of this agreement."

The learned trial court construed this agreement as in effect constituting two releases, one a particular release with respect to the business, executed between the plaintiff and his father, and the other a general release by the two sons to their father, and, therefore, held that the general provisions are not limited by the particular provision relating to the settlement of the controversy with respect to the business.   I am unable to agree with this construction of the instrument.   All of the provisions

of the agreement are, I think, consistent with the testimony of the defendant, which shows that he denied that the plaintiff was interested in the business, but conceded that Bertram was associated with him therein. The first part of the agreement relates to the settlement of the controversy between the plaintiff and his father, from which it would appear that the father, while claiming that the plaintiff had no interest, made very substantial concessions represented by his agreement to pay $8,800 on account thereof. The latter part of the agreement, which constitutes an agreement between the two sons and their father, plainly shows that it also relates to the business to which the plaintiff had asserted a claim denied by his father, and in which the father conceded that the other son was associated with him. The consideration for the release of their father by the two sons in this part of the agreement is recited to be the consideration thereinbefore stated, which was the settlement of the controversy between the plaintiff and his father, and in addition thereto the nominal consideration of one dollar, and while the provisions of the second last paragraph, in which the sons released their father, are general, yet they are qualified by the last paragraph, which clearly shows that they were intended to relate to the business, for it is therein provided that the father agrees, in consideration of the release by his two sons, to assume and discharge all debts and liabilities incurred in connection with the business, and to hold them harmless therefrom, and contains in general language a release by the father to the sons.

The general rule is that where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed *to* be limited thereby. (Jackson v. Stackhouse, 1 Cow. 122; Hoes v. Van Hoesen, 1 Barb. Ch. 379;

McIntyre v. Williamson, 1 Edw. Ch. 34; Slayton v. Hemken, 91 Hun, 582; Romaine v. Sweet, 57 App. Div. 613; Murphy v. City of New York, 190 N. Y. 413, 416; Eisert v. Bowen, 117 App. Div. 488; affd., 191 N. Y. 544; Kirchner v. N. H. S. M. Co., 135 id. 182; Texas & Pacific R. Co. v. Dashiell, 198 U. S. 521; Todd v. Mitchell, 168 Ill. 199; Bassett v. Lawrence, 193 id. 494; Van Slyke v. Van Slyke, 80 N. J. L. 382.) At one time it was considered most important in deciding such questions whether a particular recital preceded or followed the general words of release, but later decisions show that this is not controlling. (Romaine v. Sweet, *supra;* Murphy v. City of New York, *supra.*) There is no reference in this agreement to any claim on the part of the sons against the father as their guardian, and it would, we think, be unreasonable to consider the agreement as releasing the liability of the defendant as guardian, even if a general release by the sons to their father would release him as guardian, which is, to say the least, extremely doubtful. (See Markley v. Camden Safe Deposit & Trust Co., 74 N. J. Eq. 279; Matter of Camp, 126 N. Y. 377, 389.)

There is no force in the contention that the Statute of Limitations has run against the action. The father as guardian was trustee of an express trust, and until he accounts or repudiates the trust the Statute of Limitations does not run against the right of the beneficiaries to call him to account. (Matter of Ashheim, 111 App. Div. 176; affd., 185 N. Y. 609; Matter of Irvin, 68 App. Div. 158; Matter of Anderson, 122 id. 453; Matter of Camp, *supra;* Matter of Sack, 70 App. Div. 401; Matter of Taylor, 30 id. 213.) So far as appears he neither accounted nor repudiated the trust. The record discloses no act which would set the statute running in his favor. It must, therefore, be deemed that he still holds the property for the plaintiff. There is no evidence with respect to when plaintiff first knew or discovered that defendant had received this money

as such guardian or had not accounted therefor. Libby v. Van Derzee (80 App. Div. 494; affd., without opinion, 176 N. Y. 591) and Constantine v. Constantine (91 App. Div. 607), relied upon by counsel for the respondent, although not in harmony with the views here expressed, are distinguishable on the ground that those actions were not brought for an accounting, and the decision in one of them was placed on the ground that they were actions at law. Matter of Van Derzee ('73 Hun, 532), also relied upon by the respondent, is, I think, in direct conflict with Matter of Camp and is inconsistent with the later decision in Matter of Sack (*supra*), and is also in conflict with the principle upon which the decisions in Matter of Ashheim and Matter of Irvin (*supra*) are based.

It follows, therefore, that the judgment should be reversed and there should be an interlocutory judgment for an accounting, with costs to the appellant to abide the event.

INGRAHAM, P. J., CLARKE, SCOTT and SMITH, JJ., concurred.

Judgment reversed and judgment ordered for an accounting, with costs to appellant to abide event. Order to be settled on notice.