In the Matter of the Petition of EDWARD P. ORRELL, JR., to Prove the Last Will and Testament of GEORGE W. SHARP, Late of the County of Kings, Deceased.

Surrogate's Court, Kings County, June 20, 1929.

*Field & Field*, for the proponent.

*Alexander Teitler*, for the contestant.

*Kellogg, Emery & Inness-Brown*, for Dora Cody and Maude Burns, heirs at law and next of kin.

*Otto Scheilke*, for Maggie S. Eshelman, an heir at law and next of kin.

*Herman F. Smaltz*, for Brooklyn Baptist Orphanage, now known as Children's Home of the Long Island Baptist Association, one of the legatees.

WINGATE, S.   This proceeding arises upon the petition of Edward P. Orrell, Jr., for the probate of a lost or destroyed will.  Such probate is contested on the ground that the will was in the possession of decedent, and, it not having been found subsequent to his death, he is presumed to have destroyed it with an intention of revocation. The evidence clearly establishes that on February 23, 1917, the will, probate of which is prayed, was duly executed, and that all of the necessary formalities were complied with.  On that date the testator was concededly of sound mind and there is no suggestion of undue influence.

That the retained draft copy of the will is a true copy is also clearly established.  The scrivener of the will testified to the preparation of the draft and the original, and the comparison of the two, and his testimony as to the latter act is reinforced by the testimony of his wife.  They are careful, intelligent people, and gave every indication of truthfulness.

After execution the will was taken by the testator, and it was not found following his death.

The witnesses who testified to the search for it appeared to be truthful.  The search was apparently diligent and thorough.  Under such circumstances, a strong presumption arises that the will was destroyed by the testator with the intention of revoking it.  (*Matter of Staiger*, 243 N. Y. 468; *Matter of Kiltz*, 125 Misc. 475; *Matter of Vogelsang*, 133 id. 395; *Matter of Ascheim*, 75 id. 434.)

Proponent claims, however, that at the time the will was last seen in testator's possession, on the 12th or 13th of January, 1928, and from that time continuously until his death, testator was insane and lacked testamentary capacity, and that, consequently, if he did destroy the will it would not be a valid revocation.  I am convinced of the truth of the testimony of Mr. Orrell, that he saw the will in testator's possession on the 12th or 13th of January, 1928, and that it was then in the same condition that it was when it was executed.

In February, 1928, testator was taken to the Kings County Hospital, and from there committed to Kings Park State Hospital for the Insane.  The records of the latter hospital show that he was suffering from paresis when admitted, from which disease he died on March 1, 1928.

The burden of showing that testator was not of sound mind at, and at all times after, the time he was last seen to have the will in his possession, during which period he would be presumed to have destroyed it with the intention of revoking it, is upon the proponent.

As is said by the Court of Appeals in *Matter of Staiger* (243 N. Y. 468, at p. 472): " If a will, shown once to have existed and to have been in the testator's possession, cannot be found after his death the legal presumption is that he destroyed it *animo revocandi*. [Citing authorities.] There is no proof that Mrs. Staiger destroyed her will, but when a will previously executed cannot be found after the death of a testator there is a strong presumption that it was revoked by the testator and this presumption stands in the place of positive proof. One who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof." To like effect see *Matter of Kennedy* (167 N. Y. 163, 168); *Matter of Cunnion* (201 id. 123); *Matter of Waldron* (19 Misc. 333).

As stated, the position adopted by proponent is a variation of the usual routine case of this type. In substance, he admits that testator destroyed the will, but seeks to avoid the natural effect of such act by claiming that testator did not perform this act of destruction *animo revocandi*, for the reason that at all times subsequent to the 12th or 13th of January, 1928, when the will was last seen in his possession, he was insane, and, consequently, lacked the testamentary capacity requisite to transform such destruction into a valid act of revocation.

It is, of course, fundamental that to effectually revoke the will, testator must, at the time of such destruction, have had the same degree of testamentary capacity which is required for the original execution of a valid will. (*Delafield* v. *Parish*, 25 N. Y. 9, 59, 60; *Smith* v. *Wait*, 4 Barb. 28; *Matter of Waldron*, 19 Misc. 333; *Matter of Forman*, 54 Barb. 274; *Matter of Ascheim*, 75 Misc. 434; *Matter of McCabe*, 116 id. 637.) Since, however, the law, as noted, presumes the *animus revocandi*, as well as the destruction by the testator, from the non-production of a will known to have been in his possession, the proponent of such a will must exclude every reasonable possibility of such testamentary capacity by the decedent from the time the will was last seen in his possession up to the time of his death. That the decedent, in the instant case, lacked such capacity at the time of his commitment to Kings Park, cannot seriously be disputed.

The disposition of the matter depends upon whether during the period of time anterior to his commitment, his disease existed in such form as to deprive him of testamentary capacity.

The medical testimony is unsatisfactory. No physicians who examined testator were produced, although two of the Kings County Hospital medical staff were shown to have made such examination. The records of that hospital were not produced. The record of the Kings Park State Hospital was placed in evidence and an alienist testified that he had examined it and that from that record he could state with reasonable certainty that at the date when the will was last seen in testator's possession, and from that time until the date of his death, testator was insane and did not have sufficient mentality to know the nature and extent of his property, those who might naturally be the objects of his bounty, and the effect of the dispositions contained in his will.

This medical testimony, based as it was purely on records and hearsay, is entitled to be accorded scant weight. (*Matter of Burnham*, 201 App. Div. 621, 636; affd., 234 N. Y. 475; *Dobie* v. *Armstrong*, 27 App. Div. 520; affd., 160 N. Y. 584; *Matter of Eno*, 196 App. Div. 131; *Matter of Loehr*, 187 id. 957; *Pettit* v. *Pettit*, 149 id. 485, 490.) This is especially true since proponent failed to produce any one of the several doctors who had examined the decedent, or to show the records of the Kings County Hospital which were presumably much more readily accessible than those from Kings Park.

The remaining witnesses on the subject of decedent's mental capacity during this period were contradictory. Some of his acts during this period impressed certain witnesses as irrational, but, on the other hand, other witnesses testified to acts that impressed them as rational. Although these latter were interested in the result to so great an extent as to affect the weight of their testimony, they nevertheless appeared to be telling the truth. A careful weighing of all of this testimony leaves a very serious doubt in the mind of the court on the vital question of whether the decedent, *at all times* during the period in question, was lacking in testamentary capacity. In this situation, it must be held that the proponent has not sustained the burden of proof of establishing that testator was lacking in testamentary capacity during every portion of the time from the date when the will was last seen in his possession to the time of his death. It follows that the presumption that the will was destroyed by testator during his lifetime with the intention of revoking it must prevail and probate of the will must be denied.

Submit decree, on notice, accordingly.