In the Matter of the Estate of ABRAHAM MESSLER QUICK, Deceased.

Surrogate's Court, Kings County, December 30, 1932.

*Louis B. Hasbrouck* [*James E. Finegan* of counsel], for the petitioner.

*John W. Remer,* for the contestant Bertha H. Gurnee.

*Claude V. Pallister,* for The General Synod of the Reformed Church in America.

*Leonard J. Reynolds,* for John G. Addy and Erika Daum.

WINGATE, S. Abraham Messler Quick died on September 12, 1932, aged about ninety-six years. He left an estate which, even in these days of depressed valuations, is estimated as being worth approximately $1,015,000. Citation for the probate of a purported will and five codicils was issued on September twenty-second, directed to his next of kin and, pursuant to the provisions of section 140 of the Surrogate's Court Act, to all beneficiaries in the several alleged testamentary documents whose benefits were presumptively revoked by later testamentary acts. Among this latter class was one Bertha Hartshorn Gurnee, who was not related to the decedent, but was named as a beneficiary in his will and second codicil. Mrs. Gurnee duly appeared in the proceeding and filed objections on all of the usual grounds to the probate of the third, fourth and fifth codicils.

The present proceeding, seeking an adjudication by this court that Mrs. Gurnee is not a person, within the provisions of section 147 of the Surrogate's Court Act, who may file objections, was initiated by an order to show cause dated November first, upon which issue was joined and hearings have been had.

Section 147 of the Surrogate's Court Act provides, in substance, that objections may be filed by any person named as a legatee in a prior testamentary instrument of the same testator which was not duly revoked by him.

The provisions for Mrs. Gurnee in the will and second codicil were, in form, revoked by the third codicil, objections to the probate of which she has interposed. Whether or not these benefits were validly revoked is, therefore, the issue presented in the probate proceeding and her alleged incapacity to contest is not based upon this ground, but upon certain events which took place during the summer of 1930.

The facts in respect to these transactions are substantially admitted. Mrs. Gurnee was the wife of a nephew of Mrs. Quick. In 1926 both Dr. and Mrs. Quick were approximately ninety years of age and the latter, at least, in somewhat advanced state of infirmity which rapidly progressed to substantial helplessness. They were childless and wealthy. They conceived the idea of

having this nephew and his wife come to live with and take care of them. Negotiations to this effect were initiated in the spring or early summer of that year and progressed to a point where such an arrangement was almost, if not quite, concluded, when the nephew died. The Quicks still desired to have Mrs. Gurnee carry out the arrangement on her part. After some correspondence, it was arranged that she should close up her household in the west, move to New York and take up her residence in the establishment of the Quicks in Brooklyn. This agreement seems to have been reached about the middle of August, 1926, although Mrs. Gurnee did not actually go to reside with them until some time in the latter part of the fall. In the meantime, Dr. Quick executed the will which has been offered for probate. This erected a trust in his entire property for his widow for life, in the event that she should survive him, and divided the remainder, upon her death, among a considerable number of individuals and corporations, providing, among other bequests, in subdivision " g " of the sixth item: " I give and bequeath to Bertha Hartshorn Gurnee, widow of Paul D. Gurnee, of Madison, Wisconsin, the sum of Twenty-five thousand ($25,000) Dollars."

Mrs. Gurnee duly broke up her establishment in the west in pursuance of the arrangement, came to Brooklyn, and resided with the Quicks until after the wife's death on March 2, 1930, and, indeed, until she was ordered out of the house by Dr. Quick. It is conceded that during this period Mrs. Quick became increasingly infirm and unable to care for herself, and that much, if not the entire, care for her devolved upon Mrs. Gurnee.

During this period of approximately three and one-half years the only sums which Mrs. Gurnee received from either of the Quicks was twenty-five dollars for Christmas and ten dollars on one birthday, her entire expenses, other than for housing and board, falling upon her own resources, which the record shows, without controversy, to have been extremely meagre.

The arrangement made by the Quicks with Mrs. Gurnee was that she should be recompensed for her services and care of them by the wills of either or both. As a matter of fact, the $25,000 bequest to her, hereinbefore noted, had been inserted in Dr. Quick's will prior to the time that Mrs. Gurnee became a member of the household, and in the second codicil to his will, executed on June 28, 1928, there is found a further provision reading as follows: " I give and bequeath to Bertha Hartshorn Gurnee, in addition to the provision made for her in subdivision (g) of paragraph ' Sixth ' of my said will, the sum of Five thousand ($5,000) Dollars. The provisions for her in said will and this codicil are not only in con-

sideration and recognition of her coming to live with my wife and me, but also in full compensation for any and all services she has rendered or may hereafter render to my wife and me so long as she shall live with either of us."

It has been established to the satisfaction of the court, however, that these testamentary provisions were wholly unknown to Mrs. Gurnee at any time prior to the death of Dr. Quick, and all her actions subsequent to the death of Mrs. Quick would seem to demonstrate this fact beyond a reasonable doubt.

Upon the death of Mrs. Quick and the propounding of her will for probate, it was found that her entire estate had been left to her husband, the present decedent, and that no benefit thereunder had been given to Mrs. Gurnee. In view of her faithful and arduous services to Mrs. Quick, and the fact that her personal resources from which she had been compelled to defray all expenses for three and one-half years, other than bare board and lodging, were substantially exhausted, she felt great disappointment and resentment at what she deemed a breach of the understanding by which she had been induced to break up her home and take up her residence with Dr. and Mrs. Quick. She consulted an attorney and, as a result of his advice, brought an action in the Supreme Court in the sum of $50,000 against Mrs. Quick's estate and Dr. Quick for the reasonable value of her services.

Negotiations looking to the settlement of her claim were initiated in the late spring, following Mrs. Quick's death. They did not, however, culminate until August 22, 1930, after the action was actually instituted. In the interval Dr. Quick had drawn a purported third codicil in which he revoked the provisions for Mrs. Gurnee contained both in the will and second codicil. This document appears to have been executed on July 25, 1930, at a time when Dr. Quick was in a hospital. Process in the action was served upon the estate of Mrs. Quick on August 18, 1930, and upon Dr. Quick on the following day. On August twenty-second the executor of Mrs. Quick's estate, who was also Dr. Quick's attorney, negotiated a settlement of the action brought by Mrs. Gurnee by the payment to her of two certified checks aggregating $10,000. At the same time she executed a document in the form of a release which recited that she was induced by Dr. Quick and his wife to break up her home and come to live with them upon the promise that she would be amply rewarded for her sacrifice and would be amply provided for in the wills of Dr. or Mrs. Quick or both; that Mrs. Quick had died and that no provision had been made for her in her will; that she had decided to insist upon her legal rights in the premises and had brought

an action in that regard, and that " Whereas, in making this settlement, I do so expecting, understanding, and believing that I will receive nothing in the will of Abraham Messler Quick; " therefore, in consideration of $10,000 in hand paid by the executor of Mrs. Quick's estate and Dr. Quick, she set forth that she does " hereby settle the said action and have by these presents released and forever discharged    *    *    *    the said Louis B. Hasbrouck as executor of the Last Will and Testament of Martha Antoinette Quick, deceased, the Estate of the said Martha Antoinette Quick, deceased, and Abraham Messler Quick, his heirs, Executors, administrators and assigns; " then follows the usual release form enumeration of things released, the instrument continuing: " which against the said Louis B. Hasbrouck as Executor of the Last Will and Testament of Martha Antoinette Quick, deceased, the Estate of the said Martha Antoinette Quick and Abraham Messler Quick, I ever had, now have or which I, my heirs, executors, administrators and assigns, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents and particularly to the matters hereinbefore particularly specified and set out."

This release was prepared and presented to Mrs. Gurnee by Mr. Hasbrouck, acting in his capacities of executor of Mrs. Quick's estate and attorney for Dr. Quick.    She signed it without independent legal advice.

It is the contention of the proponent, who is the executor named in Dr. Quick's will, that by reason of the execution of this instrument, Mrs. Gurnee disabled herself from receiving the legacies given her by the will and second codicil, and that for this reason she is not interested in the event of the probate of the various documents propounded and consequently has no *locus standi* to interpose the objections heretofore filed herein.

The first suggestion made on behalf of Mrs. Gurnee is that the question of her right to take is prematurely raised and should be reserved until after the validity of the alleged testamentary documents is determined and possibly until the time of the accounting.    This proposition is unsound in law, since it has frequently been determined that such a preliminary question of the status of a would-be contestant should be disposed of prior to the probate. (*Matter of Cook*, 244 N. Y. 63, 72; *Matter of Hagen*, 119 Misc. 770; affd., 206 App. Div. 682; *Matter of Hamilton*, 76 Hun, 200, 204.)

It is also contended on behalf of Mrs. Gurnee that the release was executed by her through a mistake of fact on her part coupled with a violation of a fiduciary obligation on the part of Mr. Has-

brouck to disclose to her the contents of Dr. Quick's will. This contention, also, cannot be sustained. Mrs. Gurnee knew or should have known that in dealing with Mr. Hasbrouck she was dealing with a distinctly adverse and hostile party. In his fiduciary capacity as executor of Mrs. Quick's estate he was actually named as a party defendant in the action brought by Mrs. Gurnee, and he was also, to her knowledge, the attorney for the other defendant. The action had actually been instituted and was pending. Any disclosure by Mr. Hasbrouck of knowledge which he had gained in a professional capacity respecting the contents of Dr. Quick's will or relating to its provisions, would have been a serious breach of ethics, if not worse. The parties were clearly dealing at arm's length and whatever natural provocation may have existed for Mrs. Gurnee's action by reason of her precarious financial situation and the rather illiberal treatment which had been accorded her during the period of her long service, she is bound to have known that the alternative agreement for her benefit in the wills of Dr. or Mrs. Quick had not been breached until the death of the former as well as the latter.

The foregoing, however, does not by any means dispose of the question propounded, which, in final analysis, is as to whether the release executed by Mrs. Gurnee would have been a bar to any rights to claim as a legatee under the will and second codicil, had the third and subsequent codicils never been drawn. If Mrs. Gurnee should be permitted to contest these codicils and should be successful in the litigation, this is precisely the question which would be presented. An affirmative determination that she would have no right to take in the event of such successful contest, lies at the root of the entire question here presented.

It has been repeatedly determined that general words in a release are controlled by words relating to a particular claim, obligation or controversy. (*Haskell* v. *Miller*, 221 App. Div. 48, 49; affd., 246 N. Y. 618; *Remington A. U. M. C. Co.* v. *Atkinson*, 107 Misc. 389, 393; affd. as to this point, 191 App. Div. 902; affd., 234 N. Y. 586; *Murphy* v. *City of New York*, 190 id. 413, 415; *Kirchner* v. *New Home Sew. Machine Co.*, 135 id. 182, 187; *Mitchell* v. *Mitchell*, 170 App. Div. 452, 456; *Romaine* v. *Sweet*, 57 id. 613, 615; *Hoes* v. *Van Hoesen*, 1 Barb. Ch. 379, 398; *McIntyre* v. *Williamson*, 1 Edw. Ch. 34, 38, 39.)

The entire language in the release at bar, in so far as it relates to particular claims, obligations or controversies, refers solely to the claim of Mrs. Gurnee for services rendered, and to the action based thereon, and it follows on well-established authority that the effect of the document must be limited to that particular claim and controversy.

The insertion of the recital clause reading: " Whereas, in making this settlement I do so expecting, understanding and believing that I will receive nothing under the will of Abraham Messler Quick," is nugatory and meaningless in this proceeding. A will does not exist until the death of the testator. Up to that moment it is ambulatory and becomes effective only upon death. *Voluntas testatoris est ambulatoria usque extremum vitæ exitum. (Matter of Gaffken,* 197 App. Div. 257, 259; affd., 233 N. Y. 688; *Obecny* v. *Goetz,* 116 App. Div. 807, 808; *Gridley* v. *Gates,* 228 id. 579, 583; *Matter of Snowden,* 137 Misc. 56, 57, 58.)

The mere fact that the releasor expected, understood and believed that Dr. Quick would not, by an act to become effective after the date of the release, make a gift to her, would in no wise prevent her from accepting such a gift, if made. It is unquestionable law that the only claims which are barred by the giving even of an unlimited release are those which were in existence prior to its delivery. Any rights arising simultaneously with the delivery, or subsequent thereto, are not discharged thereby. *(Miller* v. *Schloss,* 159 App. Div. 704, 710; *McIntyre* v. *Williamson,* 1 Edw. Ch. 34, 37; *Stearn* v. *Strauss,* 190 N. Y. Supp. 579, not officially reported; *Farnham* v. *Farnham,* 204 App. Div. 573.)

The language of the Appellate Division of this department in the last cited case is particularly interesting in this connection. Beginning at page 573, Mr. Justice YOUNG, writing for the unanimous court, says as follows: " The action is brought to recover $5,000 under an agreement dated December 29, 1899, made by one George A. Farnham, the plaintiff's brother, to will that sum to her in the event that he predeceased her. George A. Farnham died leaving a will which was admitted to probate July 20, 1922, in which the defendant was appointed executrix and letters issued to her. This will contained no provision for the payment of the above sum to plaintiff.

" The answer is in substance a general denial and a special defense alleging the execution and delivery by plaintiff to said George A. Farnham of a general release bearing date June 1, 1908, expressing a consideration of $177 and releasing him from all claims, etc., from the beginning of the world to the date of the release.

" Plaintiff moved to strike out this defense as insufficient in law, and from an order denying her motion she appeals to this court.

" I think this order should be reversed. It is undoubtedly the general rule that demands originating at the time a general release is given or subsequently, and demands subsequently maturing, are not discharged by the release unless expressly embraced therein

or falling within a fair import of the terms implied. (*Miller* v. *Schloss*, 159 App. Div. 704; *Mitchell* v. *Mitchell*, 170 id. 452.)

" The claim sought to be enforced in this action did not and could not mature so as to give a right of action to plaintiff until a breach of the agreement. That of course could not occur until Farnham's death without making a will providing for the payment of plaintiff's claim. It seems quite clear, therefore, that this general release could not include the claim in question and, therefore, constitutes no defense.

" Nor could this release be modified or explained by parol evidence so as to cover plaintiff's claim. The instrument itself is the only competent evidence of the agreement of the parties unless avoided for fraud, mistake, duress or some like cause. (*Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182.) In the case at bar no mistake or fraud is alleged, but the instrument itself is relied upon as constituting a defense."

To maintain that a document of the type and phraseology of this release would debar Mrs. Gurnee from taking a testamentary gift under the existing circumstances, would be equivalent to saying that even if subsequent to the execution thereof, he had validly made an additional codicil in which he left her a specific sum, she could not take thereunder; or to contend that by reason of the giving of a general release, in the ordinary case, the releasor would not receive good title to a subsequent gift *inter vivos* from the releasee.

Viewing the matter solely from the standpoint of the valid execution of the will and second codicil and granting that Mrs. Gurnee be successful in the contest of the third and subsequent codicils, there is an additional basis, on the facts of the present case, for the present determination. The major bequest to her, contained in the will, was made a considerable period of time prior to the rendition of any services by her or her taking up her residence with the decedent and his wife. Analyzing the provisions of the document, it seems a wholly natural disposition of the property of a childless and widowed man on the basis of the property which he is shown to have possessed. Gifts to those having a claim upon his bounty by reason of relationship to himself aggregated $42,000, gifts to those occupying a like position to his wife aggregated $75,000, and benefits to strangers totaled $45,000. Outright benefits to charities amounted to $58,700 plus the residue of the estate which, subject to administration expenses, aggregated $794,300. Taking the provisions of the will and second codicil together, the comparative figures are even more striking, since the gifts to his relatives amounted to $77,000, to those of his wife

$80,000, to strangers $91,000, with the balance to charity. In this connection it might be argued that Mrs. Gurnee was not an actual relative of Mrs. Quick. She was, however, the wife of a favorite nephew, and it should be noted that in subdivision (d) of item sixth of the will Dr. Quick also gave a benefit to the widow of one of his own deceased nephews, who obviously bore no closer relationship to him than that sustained by Mrs. Gurnee to Mrs. Quick.

It is primary that the testamentary capacity required for revocation of a will must equal that demanded for its making in the first instance. (*Matter of Sharp*, 134 Misc. 405, 407; affd., 230 App. Div. 730.) No question has been raised as to the validity of the will and second codicil. If, after their execution and in July, 1930, this testator, who was then approximately ninety-four years of age, and was confined to a hospital, did not have the requisite testamentary capacity, the third codicil revoking the bequests to Mrs. Gurnee would be void. Since the will and second codicil would not have become effective until after the giving of the release, their provisions for Mrs. Gurnee would be valid gifts to her of the sums specified therein, anything in the release to the contrary notwithstanding.

On the subject of whether or not the decedent on and subsequent to July 25, 1930, had the requisite testamentary capacity and in other respects complied with the statutory conditions precedent to the making of a valid testamentary document, Mrs. Gurnee is entitled to her day in court.

The application for the striking out of her objections is, therefore, denied.

Proceed accordingly.