## VINES v. GENERAL OUTDOOR ADVERTISING CO., Inc.

### No. 32, Docket 20967.

United States Court of Appeals
Second Circuit.

Dec. 2, 1948.

Lyman Stansky, of New York City, (Nathan Amchan, of New York City, of counsel), for plaintiff-appellant.

William E. Beehan and Maxwell S. Mattuck, both of New York City, (Benjamin H. Trask, of New York City, of counsel), for defendant-appellee.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, summarily dismissing a complaint in four counts, upon a quantum meruit for work and services rendered to the defendant by the plaintiff as a solicitor for outdoor advertising. The defendant before answer moved to dismiss the action by producing four written contracts under which the plaintiff served from March 1st, 1936, to March 1st, 1943, when he resigned; and, so far as is relevant to the disposition of the four counts, there is no dispute of fact. The first contract, executed on March 1st, 1936, provided that the defendant "employed" the plaintiff "to solicit" advertisements and "to render such other services as may be required of him"; and that he accepted the employment and agreed to give all his time to it, each party being free to end the employment at will by written notice. The plaintiff was to solicit only such advertisers as the defendant should "from time to time" assign to him, and these assignments might be "withdrawn * * * at any time," whether the "solicitation" or "negotiation" were "pending," or "prospective." The plaintiff was to have no "compensation" for securing any contract after any "assigned" advertising had been withdrawn, even though he might have "solicited" the contract, and "wholly or in part negotiated" it before the withdrawal. The pay was based upon a "quota" for each solicitor, fixed from time to time by a complicated computation, depending upon the contracts which he

should "procure"from the advertisers "assigned" to him. No contract would be included, if the advertiser was "withdrawn" before "the acceptance and signing of the contract" by the defendant. The contract also contained the following clause: "Upon the termination of this agreement all rights of the salesman to compensation for any services rendered to the company hereunder or otherwise shall thereupon cease and terminate, and the salesman hereby waives and relinquishes any and all rights to any compensation from the Company for any services he may have so rendered." The three later contracts executed on April 8th, 1941, January 7th, 1942, and January 1st, 1943, did not differ in the provisions relevant to the action at bar, although the pay was a fixed weekly stipend, to which was added a bonus computed on the contracts procured by the solicitor. The "termination" clause and the clause permitting the withdrawal of "assigned" advertisers were incorporated in each, substantially unchanged.

It is the plaintiff's position on the first count that none of these contracts was valid because they all lacked mutuality of promise; and that in consequence they did not fix his compensation. His position in his second count is that he was forced by fraud and duress to sign each of the contracts because the defendant told him that if he did not give up his claims for money already due for past services, he could not keep his job. His position in the third count is that contracts of 1942 and 1943 were procured from him by an added fraud and duress because the defendant falsely told him that it had the right to withdraw a large customer—Liebmann Breweries—and b e c a u s e i t threatened to do so, unless he assented. The fourth count was upon a quantum meruit for services rendered, which, the plaintiff alleges, resulted in contracts made and sums collected between January 1st, 1943, and December 31st, 1943; but it does not allege that the defendant had concluded these contracts before the plaintiff re-

signed. At a time not disclosed except that it must have been before February 27th, 1947,—the date when the judge filed his opinion—the plaintiff made a fifth claim, never reduced to a pleading: i. e. that the defendant's withdrawal of the Liebmann Breweries was in pursuance of a contract between itself and Outdoor Advertising Company, Inc., which in 1929 had been declared to be a violation of the Anti-Trust Acts, 15 U.S.C.A. § 1 et seq., by a decree in an action brought by the United States. The plaintiff says that he did not learn the facts on which he bases this claim until December, 1945, when they were disclosed in the examination before trial of the defendant's vice-president, Clark. The judge considered this claim in his opinion and disposed of it on the merits.

▮ It is not necessary to decide whether the contracts were bilateral, and created any obligations at the time they were executed; we will assume for argument that they did not because of the reserved power of both parties to withdraw at pleasure. Nevertheless, the defendant became bound to pay the plaintiff according to the tenor of the contract for any work he did after he had done it; and, conversely, the stipulated pay was the measure of any claim which the plaintiff had for whatever work he did. Thus, until one party or the other withdrew, the contracts continued to be offers to pay for services rendered, and became unilateral contracts as and when the plaintiff performed.[1] That disposes of the first count.

▮ The second count depends upon whether the plaintiff was deceived or forced to accept the contracts. He was examined at great length before trial (over 800 questions), and stated in detail his position on both issues. On the score of duress he testified that the contract of 1936 was voidable because, as a condition to its execution, the defendant either said that it would "eliminate" a claim for $2000 which he had earned for past services, if he would not sign the new contract; or in-

---

[1] Willetts v. Sun Mutual Ins. Co., 45 N. Y. 45, 6 Am.Rep. 31; Rubin v. Dairymen's League Co-op Ass'n, 284 N.Y. 32, 29 N.E.2d 458; Schnerb v. Caterpillar Tractor Co., 2 Cir., 43 F.2d 920; Restatement of Contracts, § 44, Illustration 1.

sisted that he should surrender the claim, as part of any continued employment. Apparently his theory is that, if the contract can be avoided, the defendant will become liable on the theory of unjust enrichment for the reasonable value of his services above the pay he received. The law of duress has indeed been much extended; "it is inconsistent with the modern theory of duress to assert as an infallible rule that threatened repudiation of contractual obligation cannot amount to duress." [2] Still, it is certainly the law in New York, and probably elsewhere, that, if an obligee has adequate legal remedies, the obligor's threat to repudiate the debt, unless the obligee will enter into the contract, will not *"without more"* avoid it. [3] This is also the law in federal courts. [4]

■ As we have intimated, it is not clear whether the plaintiff means to assert that the defendant threatened to repudiate his claim for $2000 due for services already rendered, if he would not sign the new contract; or whether, acknowledging that it was due and not threatening to repudiate it, the defendant merely made it a condition that the plaintiff must surrender the claim in order to hold his job. We will consider it in both aspects. If the defendant threatened to repudiate the debt, the situation falls within the New York decisions which we have cited that such a repudiation "without more" is not duress; there was nothing in the plaintiff's testimony to suggest that he was in such exiguous circumstances that, if he did not accept the new terms, the defendant's repudiation would put him in want or prevent him from successfully collecting the debt. His responsibilities do not appear, and he had been earning an income as the defendant's salesman since 1922; and was probably in a position to get employment elsewhere; at least that was true in 1943.

Since it was his burden to show something "more" than the threat to repudiate, the judge was therefore right in believing that on his own statement he had not made out a case. On the other hand, if the defendant did not threaten to repudiate the debt, but merely made its cancellation a condition of the plaintiff's continuing in its employ, there was no shadow of duress in that. He had no more right to continue on the job, than he had had to get it, when he first came to the defendant; and the defendant was as free to set any new terms it pleased upon his future services as it had been to fix the original ones. On this view it merely offered him an option; the debt, without the new job, or the new job, without the debt. The choice was his.

■ The claim of fraud is equally baseless. When first he testified on April 2d, 1946, the plaintiff said that the defendant gave him to understand that, whatever he had already earned "would be completely eliminated," unless he continued in the defendant's employ. "That was one of the forms of coercion"; and he added: "I am not claiming any deceit at that time." His grievance was that "I would have to sever my connection with the company in order to secure the benefits I was entitled to previous to that date." Incidentally this second statement was quite contradictory to the "elimination" of the debt; but at best both could mean no more than that he would have to give up his claim to $2000, if he was to be re-employed; and there was no fraud about that, as he himself declared. On April 18th he testified that the defendant told him: "You have this money coming to you and unless you sign it you can't work here." Then he added: "I believed them, and I believed they had the right to take it away, and I thought I was —by not signing it there that I would deprive myself of the rights that I had."

---

[2] Williston on Contracts, Revised Edition, § 1620.

[3] Secor v. Clark, 117 N.Y. 350, 22 N.E. 754; Doyle v. Trinity Church, 133 N.Y. 372, 31 N.E. 221; Boss v. Hutchinson, 182 App.Div. 88, 169 N.Y.S. 513; Clasen v. Doherty, 242 App.Div. 502, 275 N.Y. S. 958; J. R. Construction Corp. v. Berkeley Apartments, 259 App.Div. 830, 19 N.Y.S.2d 500; Day v. Studebaker Bros.

Mfg. Co., 13 Misc. 320, 34 N.Y.S. 463; Sheehan v. New York, 21 Misc. 600, 48 N.Y.S. 662; Steinberg Press v. Charles Henry Publications, Inc., Sup., 68 N.Y.S. 2d 793.

[4] Silliman v. United States, 101 U.S. 465, 25 L.Ed. 987; Hartsville Oil Mill v. United States, 271 U.S. 43, 49, 46 S.Ct. 389, 70 L.Ed. 822.

This does not even intimate that the defendant told him that he had no claim, or that he could not collect it, but quite the contrary; and the defendant was not responsible for anything which he believed that was not based on what it had told him.

■■ From the foregoing discussion it appears that it was proper and indeed necessary for the judge summarily to deny the claim that the 1936 contract was voidable. The case is no better as to the contracts of 1941, 1942 and 1943. As to these the suppositious duress is the same as in the case of the 1936 contract; and the fraud is even less substantial. The contract being valid, that stipulation was also valid by which the plaintiff agreed that he should have no claim at its termination except as it provided. Thus, even though the defendant did tell him in 1941 that he had no claim under the contract of 1936, it spoke only the truth; and the same reasoning applies to the 1942 and 1943 contracts; as it does to the withdrawal of his assignment to the Liebmann Breweries; for that was a right reserved in all the contracts. The plaintiff was free to throw up the job at any time, as he did in 1943; but, while it suited him to continue, he was bound. The summary dismissal of the four counts in the complaint was therefore right, there being no issue of fact to try.

■ There remains the amorphous claim, based upon the Anti-Trust Acts. The judge held that, since the contracts reserved to the defendant the privilege of withdrawing any "assigned" advertiser at its pleasure, it could not be a wrong to withdraw the Liebmann Breweries by classing it as a "national" account and assigning it to Outdoor Advertising Company, Inc. In this we think that he failed to consider the basis of such a claim. The Anti-Trust Acts [5] give a right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws"; and it has been repeatedly held that those are within this language who have been so injured though they have no contract with the wrongdoer, but only an expectation of future dealings with him.[6] There has been indeed much difference of opinion as to what is adequate proof that the "forbidden" act has caused "injury," and how great the "injury" was; but with that we have nothing to do upon a motion for summary judgment. We cannot deny the plaintiff an opportunity to prove that the defendant would have allowed him to continue to be the solicitor of the Liebmann Breweries, if it had not transferred the account to Outdoor Advertising Co., Inc.; or to prove that that transfer was in pursuance of an unlawful agreement between the two companies. If he should succeed on both issues, it would be no defense that the defendant was not bound to him by contract not to take away assigned advertisers. The absence of any contract obligation gave the defendant no more immunity from that tort than from any other tort. Decisions such as Connolly v. Union Sewer Pipe Co.,[7] A. B. Small Co. v. Lamborn & Co.,[8] and Bruce's Juices v. American Can Co.,[9] are beside the point; they held that the buyer of goods from a seller, who is engaged in violating such a statute, may not keep the goods without paying the price. The theory was that the seller's unlawful enterprise did not forfeit his title to the goods and that, since the buyer got his own title from the seller, he was obliged to conform to the conditions imposed upon its transfer. In the case at bar the wrong had nothing to do with any contract between the parties; it would have

[5] § 15, Title 15 U.S.C.A.

[6] Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S. Ct. 400, 71 L.Ed. 684; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Bigelow v. RKO Radio Pictures, 327 U. S. 251, 66 S.Ct. 574, 90 L.Ed. 652; Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791; Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d 417, 139 A.L. R. 1013; Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972; McWhirter v. Monroe Calculating Machine Co., D. C., 76 F.Supp. 456.

[7] 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679.

[8] 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597.

[9] 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219.

made no difference if there had been no contract of any kind between them. Continental Wall Paper Co. v. Louis Voight & Sons Co.[10] helps the plaintiff as little as the decisions, on which the defendant relies, help it.

 The release provisions in the contracts do not protect the defendant; they were all limited to "compensation for services rendered," and the claim is for damages for depriving the plaintiff of the opportunity to render services. The case is not so clear as to the release of April 8th, 1941, which described the claims released as follows: "all claims and demands of any kind whatsoever to the date hereof, and particularly * * * any claims or demands for salary, commissions or other compensation under any employment or contract of employment between the undersigned and the said General Outdoor Advertising Co., Inc." Although the plaintiff says that on April 8th, 1941, he did not know that the transfer of the Liebmann Breweries had been made in pursuance of an illegal contract between the defendant and Outdoor Advertising Co., Inc., that ignorance might not alone be enough to avoid the release, had it contained only the general words.[11] Moreover, the fact that words of general import were followed by particular instances, did not inexorably leave no scope to the words of general import. In releases, as elsewhere, the intent of the parties is to be gathered from the instrument as a whole.[12] Nevertheless, the courts of New York accept the common law doctrine that in a release words of general import, followed or preceded by words relating to specific claims, are, ceteris paribus, limited to the specific claims.[13] For the present, we need say no more than that the release of April 8th, 1941, did not inevitably release claims which the plaintiff might have under the Anti-Trust Acts, of which he was ignorant at the time.

The judgment will be affirmed insofar as it dismissed the four counts of the complaint; but it will be reversed insofar as it dismissed any claim the plaintiff may be able to establish under the Anti-Trust Acts. The cause will be remanded and judgment will be entered in the district court in accordance with the foregoing opinion.

---

[10] 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486.

[11] Kirchner v. New Home Sewing Machine Co., 135 N.Y. 182, 31 N.E. 1104.

[12] Murphy v. City of New York, 190 N.Y. 413, 83 N.E. 39.

[13] Haskell v. Miller, 221 App.Div. 48, 222 N.Y.S. 619; affirmed 246 N.Y. 618, 159 N.E. 675; Romaine v. Sweet, 57 App.Div. 613, 68 N.Y.S. 516; Matter of Quick's Estate, 147 Misc. 28, 34, 263 N.Y.S. 146.